[No. G007527. Fourth Dist., Div. Three. Mar. 29, 1990.]

EDWARD TESSIER, a Minor, etc., Plaintiff and Appellant, v. CITY OF NEWPORT BEACH, Defendant and Respondent.

## COUNSEL

Shernoff, Scott & Bidart, William M. Shernoff and Marian H. Tully for Plaintiff and Appellant.

Wasserman, Comden & Casselman, David B. Casselman, Kevin H. Park and Robert C. Powers for Defendant and Respondent.

OPINION

TAYLOR , J.*—Edward Tessier and his guardian appeal an order granting summary judgment in favor of the City of Newport Beach (City). We agree with the trial court's ruling that the City is immune from liability for the injuries Tessier suffered when he dove into the surf on the City's public beach.

I

On August 15, 1984, Tessier, then age 16, became a paraplegic after breaking his neck when he walked into the ocean, dove into a wave, and struck his head on a concealed sandbar. The City rejected his claim for damages and he filed suit based on premises liability, negligence, and strict liability. A second amended complaint alleged only two causes of action: (1) a dangerous condition of public property; and (2) negligence for failure to warn of the dangerous condition.

The City moved for summary judgment, asserting immunity from injuries caused by a natural condition (Gov. Code, § 831.2) and immunity based on Tessier's engaging in a "hazardous recreational activity." (Gov. Code, § 831.7.) A declaration by the City's marine director, David Harshbarger, was submitted in support of the motion. Tessier responded with voluminous evidence outlining the history of the development of Newport Harbor and its beaches, asserting the accident site was no longer a natural condition. He also asserted the City knew or should have known of the danger of sandbars because of prior similar accidents, including one at the same place on the same day. After the court granted summary judgment, more evidence was submitted to clarify Tessier's factual assertions. Reconsideration was granted, but the court reached the same conclusion and granted summary judgment in favor of the City.

We review all of the evidence submitted to the trial court. In essence, Newport Harbor was made navigable through dredging, the construction of jetties, and the diversion of the flow of the Santa Ana River. Vast amounts of sand, mud, gravel and rock were deposited on the ocean beaches, including the accident site, creating a much wider beach with a steep foreshore. Tessier's expert, oceanographer Richard Grigg, opined sandbars existed at the site of the accident and that the man-made changes there have caused sandbars, "greater in abundance and of higher relief than normally would be expected, had it not been for these man-made changes." Grigg asserted "that the site of the beach where the Tessier accident occurred was so

---

* Assigned by the Chairperson of the Judicial Council.

altered by man-made changes as to remove it from being a natural condition and that even though there were natural forces of water present, the man-made changes were the primary cause or substantial factor in creating the condition that caused the accident."

In ruling on the motion for summary judgment, the court struck portions of Harshbarger's declaration and overruled objections to plaintiff's exhibits. The remaining portion of Harshbarger's declaration asserted there was no evidence available to indicate that the accident was caused by a sandbar. In addition, he declared that the accident site had "been undisturbed by any Corps of Engineers project now over 35 years."

## II

■ Tessier vigorously argues the declarations frame a triable issue of fact: Was the beach at the accident site a "natural condition" within the meaning of Government Code section 831.2? "Neither a public entity nor a public employee is liable for an injury caused by a natural condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach." (Gov. Code, § 831.2.)

A recent decision from the Second District Court of Appeal, filed after the briefs were submitted in this case, persuasively dispenses with the majority of Tessier's arguments. *Morin* v. *County of Los Angeles* (1989) 215 Cal.App.3d 184 [263 Cal.Rptr. 479] upheld summary judgment on similar facts. Morin, also 16 years old, ran into the water at Venice Beach and dove forward in knee-deep water. His head struck a hidden sandbar and he was rendered a quadriplegic.

*Morin* reviewed all of the applicable case law—the same debated by the parties here—and held the immunity of Government Code section 831.2 required summary judgment in favor of the defendant county. Here, Tessier attempted to prove the sandbar was not a natural condition preliminary to the court's ruling on summary judgment. He claims the man-made alterations in the development of Newport Harbor were a substantial factor in causing the bottom conditions that led to his injury, in that these improvements caused more frequent, and higher, sandbars. Morin also asserted nearby improvements altered the natural flow of the waves and sand, causing the sand to build up at the site where he struck his head. The *Morin* court appropriately concluded: "The fatal flaw in plaintiff's reasoning, however, is that section 831.2 applies to, 'any natural condition of any . . . beach.' (§ 831.2.) [I]f we assume . . . that these man made improvements combined with natural forces to lower the water level at the accident site from knee-deep to ankle-deep, the *sandbar nevertheless remained a natural*

*condition* of the beach. Under these facts, section 831.2's immunity applies despite any human activity which indirectly added to the sand buildup on the beach and ocean floor. . . ." (215 Cal.App.3d at p. 189, italics added.)

We agree. It is now generally settled that human-altered conditions, especially those that have existed for some years, which merely duplicate models common to nature are still "natural conditions" as a matter of law for the purposes of Government Code section 831.2. (See, e.g., *Eben* v. *State of California* (1982) 130 Cal.App.3d 416 [181 Cal.Rptr. 714] [human regulation of artificial lake's water level]; *County of Sacramento* v. *Superior Court* (1979) 89 Cal.App.3d 215 [152 Cal.Rptr. 391] [water level and flow of river controlled by upstream dam]; *Fuller* v. *State of California* (1975) 51 Cal.App.3d 926 [125 Cal.Rptr. 586] [nearby human improvements on beach caused sand buildup, resulting in shallow water]; *Osgood* v. *County of Shasta* (1975) 50 Cal.App.3d 586 [123 Cal.Rptr. 442] [man-made lake].)

The sandbar Tessier struck, if there was one, was not built by human hands. Grigg's opinion that human improvements and engineering caused higher and more frequent sandbars begs the question. There was no evidence to even suggest that anything other than wave action and tides causes sandbars to form. The impetus for that wave action could have been engineering changes to the related beach in Newport or anywhere else along the coast. Taken to its extreme, the original dredging and creation of the entire Newport Harbor complex not only changed that City's ocean beaches but also had some effect on neighboring cities' beaches as well. The degree of change varies, but human interferences have affected beaches and the ocean bottom along the entire Southern California coastline. Under Tessier's definition, natural conditions are nonexistent for practically its entire length.

Moreover, Grigg's opinion that the ocean bottom at the accident site was not in its "natural condition" is a legal conclusion, indeed, *the* ultimate legal conclusion. He purported to reach that conclusion despite his own admission the sandbar itself was created by natural forces.

Tessier relies heavily on *Buchanan* v. *City of Newport Beach* (1975) 50 Cal.App.3d 221 [123 Cal.Rptr. 338] to support his argument that human improvements caused his accident. Buchanan broke his neck surfing at the Wedge, a steeply sloped beach that had been raised 27 feet by deposits of sand dredged from the harbor channel. This dramatic elevation, plus construction of a jetty in the immediate vicinity, caused "plunging" wave action. The appellate court reversed the trial court's order granting defendant's motion for nonsuit, concluding that it was a jury question under these particular facts whether the natural condition immunity applied.

While many subsequent cases have cited *Buchanan,* such references have consistently been in the context of distinguishing that case, rather than following it. (See, e.g., *Geffen* v. *County of Los Angeles* (1987) 197 Cal.App.3d 188, 195, fn. 4 [242 Cal.Rptr. 492].) In *Morin* v. *County of Los Angeles, supra,* 215 Cal.App.3d 184, the court stated: "[T]he record in this case contains no evidence of any improvements or unnatural physical change ' ". . . in the condition of the property *at the location of the injury,* which justifies the conclusion that the public entity is responsible for reasonable risk management in that area. . . ." [Citations].' [Citation.] The Venice pier, jetties, rock groins, and reef did not physically alter the accident site in this case, which was some distance away. For this reason, we distinguish *Buchanan.* Moreover, even if we were to assume these improvements and the forces of nature added to the buildup of sand at the accident site, [Government Code] section 831.2 still applies." (*Id.,* at p. 190; accord *Fuller* v. *State of California, supra,* 51 Cal.App.3d at pp. 938-939 [construction of jetty and harbor 3,000 feet from accident site caused sand buildup, but the court held it was a natural condition].)

Similarly here, the ocean bottom itself had no artificial structure where this accident occurred. The beach was admittedly not in the same pristine form as it was when Richard Henry Dana hove to nearby. Sand from the bay was deposited on the beach where Tessier was injured, although at least 35 years before. Nature and human forces have altered its face, and continue to do so. But mortals have no control over the winds and tides which create and destroy the sandbars and trenches, shaping the surface of the ocean floor. Tessier cites no authority to the effect a change in the amount of sand on the bottom of the ocean, over which waves come and go, makes the condition no longer a natural one.

*Gonzales* v. *County of San Diego* (1982) 130 Cal.App.3d 882 [182 Cal.Rptr. 73] reached a result similar to *Buchanan* by adopting a rule for dealing with "hybrid conditions." The plaintiffs in *Gonzales* alleged their mother drowned in an ocean riptide which the defendant city had a duty to warn her of, as evidenced by its assumption of lifeguarding functions in the area. The *Gonzales* court refused to apply governmental immunity, concluding the death was a result of a "hybrid dangerous condition, partially natural and partially artificial in character, the result of a combination of a natural defect within the property and the third party conduct of City." (*Id.,* at pp. 885-886.)

*Gonzales* has been soundly rejected. (*Morin* v. *County of Los Angeles, supra,* 215 Cal.App.3d at pp. 190-194; *Geffen* v. *County of Los Angeles, supra,* 197 Cal.App.3d at pp. 192-194; see also conc. opn. of Crosby, J., in *Rombalski* v. *City of Laguna Beach* (1989) 213 Cal.App.3d 842, 856-863

[261 Cal.Rptr. 820].) Subsequent legislation has proclaimed beaches are now deemed to be in a natural condition for purposes of governmental immunity. (Gov. Code, § 831.21, subd. (a).) That rule is prospective only, however. (Gov. Code, § 831.21, subd. (b).)

In essence, Tessier would have us rule an ocean bottom condition affected in any degree by human activity is not a "natural condition." It is inconceivable the Legislature intended such a narrow construction of that phrase in creating section 831.2. (See *Fuller* v. *State of California, supra*, 51 Cal.App.3d at p. 938.) Government Code section 831.2 bars Tessier's claim because his injury was caused by a natural condition of unimproved public property.

## III

As explained in *Morin,* Government Code section 831.7 also bars Tessier's claim because he was by definition engaged in a hazardous recreational activity. (*Morin* v. *County of Los Angeles, supra*, 215 Cal.App.3d at pp. 194-195.) "Hazardous recreational activity" includes "[a]ny form of diving into water from other than a diving board or diving platform, or at any place or from any structure where diving is prohibited and reasonable warning thereof has been given." (Gov. Code, § 831.7, subd. (b)(2).)

Tessier urges the City had a duty to warn under Government Code section 831.7, subdivision (c)(1). *Morin* expressly rejected Tessier's argument that there is an exception under that code section. "As we previously stated, defendant owed no duty to warn under [Government Code] section 831.2 even assuming the sandbar amounted to a hidden trap of which it had knowledge [citation]. Since no liability 'would otherwise exist' (§ 831.7, subd. (c)) for defendant's failure to warn, the exception created by subdivision (c)(1) of [Government Code] section 831.7 does not come into play. Any other interpretation would contravene the express language of [Government Code] section 831.7, subdivision (c), and would be inconsistent with the absolute immunity provided under [Government Code] section 831.2." (*Morin* v. *County of Los Angeles, supra*, 215 Cal.App.3d at p. 195.)

There was no triable issue of fact despite the extensive "facts" offered in opposition to the City's motion for summary judgment. We are mindful of the harshness of our ruling.     But "[a] defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail. [Citation.]" (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) Here, the City has immunity as a matter of law.

Judgment affirmed.

Wallin, Acting P. J., and Sonenshine, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 21, 1990.