[No. D034587. Fourth Dist., Div. One. Dec. 1, 2000.]

LOUIS V. SCHOOLER, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA, Defendant and Respondent.

COUNSEL

Law Offices of James B. Mehalick and James B. Mehalick for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Pamela Smith-Steward, Chief Assistant Attorney General, Margaret A. Rodda, Assistant Attorney General, Kristin G. Hogue and Michael D. Stump, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**WORK, Acting P. J.**—Louis V. Schooler appeals a judgment after the trial court granted summary judgment in favor of the State of California (the State) on his suit for injunction to abate a nuisance, costs of efforts to abate the nuisance and general damages arising from loss of use and the diminished value of his property caused by erosion of a state-owned adjacent bluff. He contends the court erred in finding the unimproved bluff adjacent to a public beach is a natural condition as a matter of law for purposes of the immunity designated in Government Code[1] section 831.25. He also contends that with respect to the injunctive relief, any governmental immunity[2] afforded under section 831.25 is barred under section 814, which under some circumstances permits a litigant to pursue actions against a governmental entity for nonmonetary relief. As we shall explain, Schooler's nuisance

---

[1] All statutory references are to the Government Code unless otherwise specified.

[2] "Immunity" or "immunities" refers to governmental immunity provisions of the Tort Claims Act unless otherwise specified.

cause of action fails as a matter of law because, on these facts, the State has no duty to prevent the bluff erosion and his damage action is barred by the immunity of section 831.25. Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Schooler owns a single-family residence at 629 West Circle Drive, Solana Beach, California, where he has lived for more than 20 years. His property lies on top of a bluff, approximately 60 feet in height, that provides lateral support for his property. At the foot of the bluff is a sandy beach, adjacent to the Pacific Ocean. Both the bluff adjacent to Schooler's property and the beach beneath are owned by the State. Over the course of the past 20 years, pedestrian traffic and natural elements, including rain, tide, wave action and wind, allegedly have eroded the bluff, compromising the lateral support for Schooler's property.

Alleging the State failed to maintain its bluff in a safe condition, Schooler seeks compensation for the continuous and irreparable loss, loss of use, diminution in value, reduced marketability, and damage to improvements of his property. Schooler asserts that pedestrian traffic from persons using the beach and activity along the bluff, including digging, have substantially damaged his property, and the State has failed to take corrective measures to prevent or discourage this pedestrian traffic and activity. He does not contend the State monitored or encouraged pedestrians to walk or dig on the bluff. The State rejected the claim in its entirety.

Schooler also seeks an injunction requiring the State to abate a nuisance and for costs incurred in connection with preliminary efforts to abate the nuisance. He contends the State's lack of maintenance of the bluff constitutes a nuisance under Civil Code section 3479 because it creates an unsafe condition obstructing the free use of his land and interferes with his comfortable enjoyment of life and property. The State moved for summary judgment, asserting its immunity from both negligence and nuisance actions pursuant to section 831.25 because its property is deemed to be in a natural condition as a matter of law. The trial court granted the State's motion for summary judgment on that ground.

## STANDARD OF REVIEW

A summary judgment is appealable under Code of Civil Procedure sections 437c and 904. Because a summary judgment raises only questions of law, this court exercises de novo review to determine whether the State has negated a necessary element of Schooler's case or demonstrated there is

no triable issue of material fact. (*Reliance Nat. Indemnity Co. v. General Star Indemnity Co.* (1999) 72 Cal.App.4th 1063, 1074 [85 Cal.Rptr.2d 627]; *Southern Cal. Rapid Transit Dist. v. Superior Court* (1994) 30 Cal.App.4th 713, 723 [36 Cal.Rptr.2d 665]; *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673-674 [25 Cal.Rptr.2d 137, 863 P.2d 207].) In doing so, we view the evidence in the light most favorable to Schooler and resolve any doubts as to granting the motion in his favor. (*Branco v. Kearny Moto Park, Inc.* (1995) 37 Cal.App.4th 184, 189 [43 Cal.Rptr.2d 392].)

### The Unsolicited Pedestrian Traffic on the Bluff Does Not Alter Its "Natural Condition" for Purposes of Section 831.25

█ Schooler contends that governmental immunity granted under section 831.25, subdivision (a) is not applicable here because the existence of occasional pedestrian traffic on the bluff alters the property so that it no longer can be characterized as in a "natural condition."

Section 831.25, subdivision (a) provides: "Neither a public entity nor a public employee is liable for any damage or injury to property . . . off the public entity's property caused by land failure of any unimproved public property if the land failure was caused by a natural condition of the unimproved public property." Both parties agree that the bluff constitutes unimproved public property to which Schooler's property is adjacent.

Generally, conditions that occur in nature but happen to be produced by a combination of human and natural forces are natural conditions as a matter of law. (*Morin v. County of Los Angeles* (1989) 215 Cal.App.3d 184, 194 [263 Cal.Rptr. 479]; *Tessier v. City of Newport Beach* (1990) 219 Cal.App.3d 310, 314 [268 Cal.Rptr. 233]; *Knight v. City of Capitola* (1992) 4 Cal.App.4th 918, 928 [6 Cal.Rptr.2d 874].) In both *Tessier* and *Morin,* the courts concluded injury-causing sandbars were natural conditions for purposes of section 831.2,[3] even though they formed due to a combination of wave action, tides, and human activity. (*Tessier,* at p. 314; *Morin,* at p. 194.) The courts reasoned that because sandbar formations occur in nature even in the absence of human activity, any contributing human activity does not alter the natural character of the condition. (*Tessier,* at p. 314; *Morin,* at pp. 190-191.)

Even though section 831.2 is distinguishable from section 831.25, subdivision (a) in that the former addresses the natural character of the land

---

[3]Section 831.2 provides: "Neither a public entity nor a public employee is liable for an injury caused by a natural condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach."

condition while the latter addresses the natural character of the *causes* that produce land failure, the reasoning used in *Tessier* and *Morin* is applicable here. The bluff erosion is alleged to be due to a combination of environmental factors and human activities. Schooler agrees wind, water and wave action are separate influences that by themselves are causing erosion. Like the sandbar formation in *Tessier* and *Morin*, the bluff erosion is occurring naturally.

The bluff erosion does not lose its natural character just because human activity is one of its contributing causes. The natural character of a resulting condition is ultimately derived from the natural character of its causes. Here, in light of the factual circumstances presented, pedestrian traffic that supplements the natural forces does not materially change the natural character of the erosion. Thus, the human activity does not affect the natural character of the resulting condition. Consequently, the bluff erosion is a "natural condition" as a matter of law for purposes of section 831.25, subdivision (a).[4]

The trial court took a different approach in ruling that the bluff erosion constitutes a "natural condition." It held the bluff is a "natural condition" under section 831.21, subdivision (a), which provides that public beaches are deemed to be in a natural condition as a matter of law. Even though we need not decide whether the bluff erosion is a "natural condition" under section 831.21, subdivision (a), we question its general applicability to this case.

Specifically, it is unclear whether the definition of "public beach" for purposes of section 831.21 includes state-owned bluffs adjacent to a public beach. Under section 831.21, subdivision (a), *public beaches* are deemed to be in a natural condition as a matter of law notwithstanding the provision or absence of public safety services such as lifeguards, police patrols and medical services. Thus, the trial court's ruling presumes the definition of "public beach" includes state-owned bluffs adjacent to a public beach. However, the trial court did not support its interpretation with authority, perhaps due to the absence of a statutory definition or case law defining "public beach" for purposes of section 831.21. Under Health and Safety Code section 115875, " 'public beach,' " for purposes of the Health and Safety Code, "means any beach area used by the public for recreational purposes that is owned, operated, or controlled by the state . . . or any private person in this state." If we were to apply the language of Health and

---

[4]The facts of this case do not require us to address when the cloak of governmental immunity provided by section 831.2 would not apply. That is, where on the comparative factual continuum of causation the element of human activity would be considered primary so as to render the result (here, erosion) no longer natural in character. Schooler's expert simply declares human activity was a "significant" contributing factor to the erosion, not that it was its primary cause.

Safety Code section 115875 to the Government Code, perhaps an adjacent bluff could fall under "beach *area*," thereby qualifying as part of a "public beach." However, we need not decide whether the bluff at issue here is included in the definition of "public beach" for purposes of section 831.21.

Even if this state-owned bluff is not included in the definition of "public beach" under section 831.21, the policy behind that section supports our finding that the bluff is in a "natural condition" as a matter of law. Section 831.21 presumes human activity does not alter the natural character of a public beach. Likewise, human activity should not alter the natural character of an adjacent bluff. The Legislative Committee comment to section 831.2 provides in part: "It is desirable to permit the members of the public to use public property in its natural condition and to provide trails for hikers and riders . . . into the primitive regions of the State. But the burden and expense of putting such property in a safe condition and the expense of defending claims for injuries would probably cause many public entitles [*sic*] to close such areas to public use." (Legis. Com. com., 32 West's Ann. Gov. Code (1995) foll. § 831.2, p. 328.) Section 831.21 specifically affirms this policy with respect to public beaches. In light of its intent behind section 831.2, the Legislature enacted section 831.21 to encourage public use of beaches. Public beaches are "primitive" in that they remain relatively unaffected by human improvements that have become part of our modern, urban society. They enable us to escape the crowded roads and pollution of city life by providing a place where we can hike, camp, or simply gaze at the ocean. Human activity such as pedestrian traffic does not remove the "primitive" qualities of public beaches as it does not diminish our ability to escape the city and enjoy the ocean.

By analogy, an adjacent bluff provides the same benefits as a public beach. With sections 831.2 and 831.21, the Legislature intended to encourage public enjoyment of the beach for its "primitive" qualities. An adjacent bluff possesses the same "primitive" qualities as it is untouched by modern improvements. Moreover, it also provides a place to walk and enjoy the ocean, away from the city. Because a beach-adjacent bluff has the same characteristics and provides the same benefits as the beach itself, pedestrian use of the bluff should not alter its natural character for the same reasons it does not alter the natural character of a public beach. Thus, in light of the policies behind sections 831.2 and 831.21, a state-owned bluff adjacent to a public beach should be deemed a "natural condition" as a matter of law.

## THE STATE IS IMMUNE FROM NUISANCE LIABILITY BECAUSE IT IS UNDER NO DUTY TO PREVENT BLUFF EROSION

The State is under no duty to prevent bluff erosion. In fact, a court-imposed duty would be inconsistent with the legislative intent underlying section 831.25. Because the existence of a duty is an issue of law for

the court, Schooler fails to raise a question of fact and summary judgment must be affirmed. (*Alcaraz v. Vece* (1997) 14 Cal.4th 1149, 1156 [60 Cal.Rptr.2d 448, 929 P.2d 1239].) His alternative theory of liability—nuisance—fails because the existence of an immunity precludes any duty to abate a nuisance. (See *Cairns v. County of Los Angeles* (1997) 62 Cal.App.4th 330, 335 [72 Cal.Rptr.2d 460]; *Sutton v. Golden Gate Bridge, Highway & Transportation Dist.* (1998) 68 Cal.App.4th 1149, 1164, fn. 9 [81 Cal.Rptr.2d 155].)

As stated in *Mikkelsen v. State of California* (1976) 59 Cal.App.3d 621, 630 [130 Cal.Rptr. 780], "[t]o permit the effectiveness of [a governmental immunity] to depend [on] whether a cause of action is [based] on the theory of nuisance or . . . negligence would be to thwart the legislative purpose." Thus, a court-imposed duty to prevent the bluff erosion by taking affirmative measures to maintain it is contrary to the legislative intent behind section 831.25. Section 831.25 relieves public entities of the responsibility to protect adjacent properties from its land failures caused by natural conditions. Its underlying legislative policy is revealed in the Legislative Committee comment to section 831.2, which states: "This section provides an absolute immunity from liability for injuries resulting from a natural condition of any unimproved public property. Thus, for example, under this section and Section 831.4, the State has an absolute immunity from liability for injuries resulting from natural conditions of a state park area where the only improvements are recreational access roads (as defined in Section 831.4) and hiking, riding, fishing and hunting trails. [¶] . . . It is desirable to permit the members of the public to use public property in its natural condition and to provide trials for hikers and riders and roads for campers into the primitive regions of the State. But the burden and expense of putting such property in a safe condition and the expense of defending claims for injuries would probably cause many public entitles [*sic*] to close such areas to public use. In view of the limited funds available for the acquisition and improvement of property for recreational purposes, it is not unreasonable to expect persons who voluntarily use unimproved public property in its natural condition to assume the risk of injuries arising therefrom as a part of the price to be paid for benefits received." (Legis. Com. com., 32 West's Ann. Gov. Code, *supra,* foll. § 831.2, p. 328.)

■ Section 831.2 reflects the Legislature's intent to reconcile its desire to enable members of the public to use and enjoy state-owned land with its concern that such use and enjoyment may impose financial and legal burdens on the State. Drafters of section 831.2 understood that the State may be subject to substantial expense in preventing injuries caused by natural conditions *before* they happen. They also foresaw the possible cost *after* the

injuries have taken place in the form of litigation expenses and damages claims. The comment refers to possible burdens and expenses arising from "putting such property in a safe condition and . . . defending claims for injuries." (Legis. Com. com., 32 West's Ann. Gov. Code, *supra,* foll. § 831.2, p. 328.) Thus, section 831.2 absolves the State from the duty to prevent future injuries caused by natural conditions on its land as well as the duty to compensate for past injuries.

Of course, the code provision at issue here is section 831.25, subdivision (a). However, section 831.25 is subject to the same policies as section 831.2. The primary difference between the two provisions is that the former applies to injuries and damages to property caused by natural conditions of adjacent state-owned land, while the latter applies to injuries sustained on the state-owned land. However, the policies behind these two provisions are similar. Both seek to relieve the State from liability for injuries caused by natural conditions of its land; both encourage public use and enjoyment of land, while relieving the State of the burden and expense of litigation and damages claims. Thus, it is reasonable that the policies set forth in the Legislative Committee comment for section 831.2 also apply to section 831.25. Consistent with those policies, the State has no duty with respect to property injuries and damage on adjacent land due to land failure caused by a natural condition both before and after the injury or damage occurs.

 Schooler argues that his claim is not contrary to the public policy behind section 831.25 because he seeks nonmonetary remedies as part of his nuisance cause of action. However, because his nuisance action is barred, he cannot establish there is a redressable nuisance for which injunctive relief is available.

### SECTION 814 DOES NOT PREVENT SCHOOLER'S CAUSE OF ACTION FROM FAILING AS A MATTER OF LAW

 Schooler argues that section 814 bars the immunity provided under section 831.25 because he seeks injunctive relief, not money damages. However, it cannot be applied in such a way as to circumvent either its own underlying legislative policy or that of another section in the Tort Claims Act. Applying section 814 as advocated by Schooler would result in both.

The policy behind section 814 is consistent with that of section 831.25. Section 814 provides that immunities per se do not affect a plaintiff's ability to obtain relief other than money damages. Courts have determined that under section 814, Government Code immunities extend only to tort actions that seek money damages. (*Arthur L. Sachs, Inc. v. City of Oceanside* (1984)

151 Cal.App.3d 315, 322 [198 Cal.Rptr. 483]; *Kucharczyk v. Regents of University of California* (N.D.Cal. 1996) 946 F.Supp. 1419, 1445.) As explained in the previous section, the policy of section 831.25 is to limit the government's legal and financial burdens with respect to injuries caused by natural conditions of public land. In turn, the government is less inclined to discourage the public's use and enjoyment of adjacent land. The policy of section 814 is consistent with these goals as it does not bar any immunities with respect to tort damages. It does not resurrect legal and financial burdens eliminated by the immunity provisions of the Tort Claims Act, including section 831.25. Instead, section 814 applies to contractual liabilities and injunctive relief. The Legislative Committee comment provides: "The various provisions . . . determine only whether a public entity . . . is liable for money or damages. . . . [¶] . . . This section makes clear that this statute has no effect on the contractual liabilities of public entities . . . . [¶] This section also declares that the provisions of this statute relating to liability of public entities and public employees have no effect upon whatever right a person may have to obtain relief other than money or damages. Thus, for example, even though Section 820.6 provides that public employees are not liable for enforcing unconstitutional statutes, and even though public entities have a similar immunity under Sections 815 and 815.2, the right to enjoin the enforcement of unconstitutional statutes will still remain. Under this statute as limited by this section, the appropriate way to seek review of discretionary governmental actions is by an action for specific or preventive relief to control the abuse of discretion, not by tort actions for damages." (Legis. Com. com., 32 West's Ann. Gov. Code, *supra,* foll. § 814, p. 163.)

Case law has repeatedly held that section 814 allows liabilities that arise out of contract. (*Arthur L. Sachs, Inc. v. City of Oceanside, supra,* 151 Cal.App.3d 315, 322; *Kucharczyk v. Regents of University of California, supra,* 946 F.Supp 1419, 1445.) Moreover, with respect to "relief other than money or damages," the type of relief covered cannot circumvent the underlying policies behind the governmental tort liability for money damages; any "relief" allowed under section 814 cannot create duties that immunity provisions guard against. The example of equitable relief provided by the Legislative Committee comment is the enjoinment of an unconstitutional statute. As applied here, the enjoinment of an unconstitutional statute is not contrary to the policy behind section 831.25; it would not create legal and financial burdens that necessarily accompany a duty to maintain the bluff. In contrast, the injunctive relief Schooler seeks requires the State to provide physical support for the bluff along with other measures to prevent pedestrian activity. These types of actions impose financial burdens on the State that section 831.25 guards against.

In sum, Schooler purports to employ section 814 in a way that is contrary to its own legislative policy as well the policy of section 831.25. Because

section 814 cannot be applied to circumvent legislative policy, we hold that immunity afforded under section 831.25 is not barred. Thus, under section 831.25, the State has no duty to Schooler.

DISPOSITION

The judgment is affirmed. The State shall have costs on appeal.

Huffman, J., and McIntyre, J., concurred.