Filed 2/6/14  Certified for publication 3/5/14 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| DAVID ESPARZA et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>COUNTY OF LOS ANGELES et al.,<br><br>    Defendants and Respondents. | B243496<br><br>(Los Angeles County<br>Super. Ct. No. BC467130) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elihu M. Berle, Judge.  Affirmed.

Lackie, Dammeier & McGill, Michael A. McGill and Michael A. Morguess for Plaintiffs and Appellants.

Jones Day, Elwood Lui, Christopher Lovrien, Kerry C. Fowler and Peter E. Davids for Defendants and Respondents.

_____

Plaintiffs David Esparza, Alan Mark, Anthony Mora, and Irene Redd were peace officers employed by the Los Angeles County Office of Public Safety (OPS). The Los Angeles County Board of Supervisors voted to dissolve OPS and merge its functions with that of the Los Angeles County Sheriff's Department. Plaintiffs each had the opportunity to apply for deputy sheriff positions, but did not meet the Sheriff's Department's qualifications. As a result, Plaintiffs were offered lower paying positions with the Sheriff's Department. Plaintiffs brought suit, alleging they were improperly terminated or demoted. The trial court sustained the demurrer and we affirm.

## FACTS

OPS was formed in 1998 when the County of Los Angeles (County) consolidated the peace officer departments in the Department of Parks and Recreation, the Department of Health Services, and the Department of Internal Services. OPS officers were "limited" purpose peace officers who were tasked with "enforcement of the law in or about properties owned, operated or administered" by the County. (Pen. Code, § 830.31, subd. (a).) OPS officers carried firearms "only if authorized, and under the terms and conditions specified, by their employing agency." (*Ibid.*)

In 1998, a class of OPS officers sued the County for racial discrimination in *Frank v. County of Los Angeles* (2007) 149 Cal.App.4th 805 (*Frank*). Though the *Frank* plaintiffs received a jury verdict in their favor, the Court of Appeal found there was insufficient evidence to establish a prima facie case of racial discrimination and overturned the verdict. (*Frank, supra,* at pp. 820-822.)

In 2009, the County Board of Supervisors voted to merge the OPS with the Sheriff's Department after consideration of a 2007 feasibility study.[1] The Board of Supervisors voted four to one to adopt the following recommendation:

---

[1]     In *Frank*, the court noted that OPS and its predecessor agencies underwent a number of administrative reorganizations between 1992 and 1998. The County considered, and rejected, consolidating all of its safety police programs into the Sheriff's Department in 1995 and 1996. (*Frank, supra,* 149 Cal.App.4th at p. 810.)

2

"For economic reasons, approve the consolidation of the Office of Public Safety (OPS) duties and functions into the Sheriff's Department and eliminate OPS effective June 30, 2010; direct County Counsel to prepare an ordinance authorizing the consolidation of OPS' duties and functions; and designate the Sheriff's Department as the agency responsible for providing all law enforcement and security services within the County; and take the following related actions: (Chief Executive Office, Sheriff's Department, and Office of Public Safety)

"Approve the Phase II Study of OPS which involves the Sheriff's Department examining Phase I estimates in greater detail and an evaluation of OPS personnel;

"Direct the Acting Director of Personnel to implement a workforce reduction plan consistent with Civil Service Rules and Board policy, based on the elimination of OPS, to absorb existing OPS staff into the recommended budgeted positions in the Sheriff's proposed plan which includes offering sworn positions in the Sheriff's Department to qualified County Police Officers; and offering non-sworn positions to County Police Officers who do not qualify for sworn positions;

"Approve an exemption from the County hiring freeze in order that the Sheriff's Department and other County departments may absorb non-sworn employees, wherever possible, who do not have specific positions identified under the Sheriff's proposed plan; employees will be placed in the Sheriff's Department or other County departments on an equivalent or comparable vacant position, wherever possible, contingent on meeting departmental qualifications and standards."

Plaintiffs brought suit against the County, the Sheriff's Department, the Los Angeles County Board of Supervisors, and the Los Angeles County Civil Service Commission, alleging that the "vast majority" of OPS officers were terminated or given lower-paying non-sworn jailer positions under a variety of pretexts after the merger. Plaintiffs alleged, "[b]ased on information and belief, Plaintiffs were retaliated against and discriminated against because of their participation in the *Frank* lawsuit, or because of their association with their coworkers who were employed by [OPS]." Plaintiffs

3

alleged the following pretexts were used to demote each of them to the position of custody assistant within the Sheriff's Department, accompanied by a substantial reduction in pay:

A "hired gun" performed Esparza's psychological fitness for duty examination with the intention of failing him. Esparza immediately consulted with a "noted" police psychologist, who found him fit for duty, but "the County refused to hire Plaintiff Esparza as a deputy sheriff."

Mark's application to be a deputy sheriff was rejected because of his moderate colorblindness. Mark alleged that he had a "moderate red/green deficiency" that had not impaired his ability to perform his duties as a security officer at the University of Southern California, a reserve police officer for the Los Angeles County Park Patrol, a reserve federal police officer for the Department of Defense at the Long Beach Naval Station, or an OPS peace officer. He received a letter from a county medical director, Dr. Robert Goldberg, stating that his vision test results were "consistent with at least moderate color vision impairment" and accordingly, Mark "[did] not meet the guidelines for the classification of Deputy Sheriff, which specify that 'anything more than minor hue impairment is disqualifying.' " Dr. Goldberg acknowledged Mark's past service for OPS, but explained that, unlike the Sheriff's Department, OPS did "not have color vision as an essential requirement."

Mora did not qualify for a position as a deputy sheriff because he failed the background investigation for reasons of "Financial Irresponsibility and Judgment." Mora alleged that his financial irresponsibility resulted from his attempt to have his mortgage modified. The County had assured him his financial problems would not be grounds for disqualification.

Redd was also disqualified from a position as a deputy because she failed the background investigation. The stated reason was "Prior Law Enforcement Termination, Integrity and Judgment," which meant she was "being terminated for cause, based on disciplinary reasons." Nothing further was alleged regarding Redd's disqualification. Plaintiffs also complained that at the time of the merger, Mark, Mora and Redd were over

4

forty years old and were terminated due to their age. They alleged, that "a majority of the over-40-year-old [OPS] peace officers were not retained as deputies sheriff for the [Sheriff's Department]."

Plaintiffs alleged 12 causes of action. The first cause of action asserted a claim for retaliation in violation of the California Fair Employment and Housing Act (FEHA) for Plaintiffs' participation in opposing the County's racial discrimination and adverse employment practices. (Govt. Code, § 12900 et seq.)[2] Plaintiffs Mark, Mora, and Redd claimed age discrimination under FEHA in the second cause of action, alleging that "Defendants' decision to dissolve [OPS] operated to exclude members of Plaintiffs' protected group-employees over the age of 40." Plaintiffs Esparza and Mark claimed disability discrimination and failure to accommodate in violation of FEHA in the third and fifth causes of action, asserting that Esparza's failure to pass the psychological fitness-for-duty examination and Mark's color-blindness reflected disabilities or perceived disabilities. All Plaintiffs claimed in the fourth and sixth causes of action that the County violated FEHA by failing to prevent discrimination and by making non-job related inquiries. The first six causes of action were alleged against the County and no other defendant.

In addition to the six FEHA-based causes of action, Plaintiffs alleged six causes of action against both the County and the Sheriff's Department for violations of the Public Safety Officers Procedural Bill of Rights Act (POBRA). (§ 3300 et seq.) Plaintiffs alleged the Board of Supervisor's vote to eliminate OPS and the Sheriff's Department's refusal to hire Plaintiffs as deputy sheriffs constituted "demotions" and "punitive actions" without the procedural protections POBRA guaranteed. Plaintiffs also alleged that the Sheriff's Department violated POBRA by requiring Plaintiffs to go through the standard application process for deputy sheriff positions, which included full background checks and polygraph examinations.

---

[2]    All further section references are to the Government Code unless otherwise specified.

5

Lastly, Plaintiffs sought a writ of mandate against "all Respondents,"[3] alleging Respondents had a duty to provide Plaintiffs with administrative appeal hearings before "discharging" them from OPS and "reducing" them to custody assistants.

The Defendants demurred on the ground that each of the causes of action were barred by the legislative immunity afforded to the County pursuant to section 818.2 and that POBRA did not apply to Plaintiffs' efforts to secure new employment with the Sheriff's Department. The trial court sustained the demurrer as to all causes of action with leave to amend. Plaintiffs chose not to amend and a final judgment was entered on July 10, 2012. Plaintiffs timely appealed.

## DISCUSSION

Plaintiffs complain of two separate acts in this case: (1) the County's decision to dissolve OPS and (2) the Sheriff's Department decision to hire Plaintiffs as custody assistants rather than Sheriff's deputies. Despite Plaintiffs' attempt to conflate these decisions, they are separate events involving separate parties. As to the County's actions, they are immunized from liability under section 818.2 for their legislative enactment. As to the Sheriff's Department, collateral estoppel applies to bar Plaintiffs' POBRA claims against it. Collateral estoppel likewise applies to block Plaintiffs' petition for writ of mandate.

## I.      Standard of Review

A demurrer tests the sufficiency of the complaint; that is, whether it states facts sufficient to constitute a cause of action. (Code Civ. Proc., § 430.10, subd. (e); *Friedland v. City of Long Beach* (1998) 62 Cal.App.4th 835, 841-842.) To make this determination, the trial court may consider all material facts pleaded in the complaint and matters of which it may take judicial notice; it may not consider contentions, deductions or conclusions of fact or law. (Code Civ. Proc., § 430.30, subd. (a); *Moore v. Conliffe* (1994) 7 Cal.4th 634, 638.) "Where the complaint's allegations or judicially noticeable facts reveal the existence of an affirmative defense, the 'plaintiff must "plead around" the

---

[3]     Though not specifically identified, all Respondents presumably include all the named Defendants.

6

defense, by alleging specific facts that would avoid the apparent defense.  Absent such allegations, the complaint is subject to demurrer for failure to state a cause of action . . . ' [Citations.]"  (*Gentry v. eBay, Inc.* (2002) 99 Cal.App.4th 816, 824.)

On appeal, this court conducts a de novo review of a dismissal resulting from a demurrer.  (*Kong v. City of Hawaiian Gardens Redevelopment Agency* (2002) 108 Cal.App.4th 1028, 1038.)  Plaintiffs bear the burden of proving the trial court erred in sustaining the demurrer.  (*Ibid.*)  We also review de novo the trial court's interpretation of state law, including the relevant provisions of FEHA and POBRA.  (*Barner v. Leeds* (2000) 24 Cal.4th 676, 683.)

## II.     Causes of Action 1-6: FEHA Violations Against The County

Plaintiffs complain that the County violated FEHA when the Board of Supervisors voted to dissolve OPS in order to merge its functions with that of the Sheriff's Department.  These claims are barred by the legislative immunity granted to the County under section 818.2, which provides that "[a] public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law."

As explained by the California Supreme Court, "both constitutional and institutional understandings require that legislative acts, even if improper, find their judicial remedy in the undoing of the wrongful legislation, not in money damages awarded against the state."  (*HFH, Ltd. v. Superior Court* (1975) 15 Cal.3d 508, 519.)  In short, "it is not a tort for government to govern . . ."  (*Dalehite v. United States* (1952) 346 U.S. 15, 57; *HFH, Ltd. v. Superior Court, supra,* 15 Cal.3d at p. 519.)  In this case, the Board of Supervisors determined that it made economic sense to use the Sheriff's Department for certain functions rather than maintain a separate police force.  The Board of Supervisors, in enacting the ordinance, attempted to safeguard both the OPS officers' employment and the public safety.  Thus, those OPS officers who were qualified to work as Sheriff's deputies would be hired as such and all others would be offered non-sworn positions by approving an exemption to the County-wide hiring freeze.

7

Plaintiffs contend that legislative immunity under section 818.2 does not apply in this case because (1) they seek injunctive relief, not only money damages; (2) this case involves the discharge of a mandatory duty; (3) the second through thirteenth causes of action are not based upon legislative action; and (4) the Board of Supervisor's vote was not an "enactment" within the meaning of section 818.2. These exceptions do not apply here.

First, Plaintiffs contend that legislative immunity under section 818.2 does not "affect[] liability based on contract or the right to obtain relief other than money or damages against a public entity or public employee." (§ 814.) Plaintiffs assert they may seek injunctive relief without triggering the immunity. We disagree. Plaintiffs may not circumvent the legislative immunity granted by section 818.2 simply by alleging injunctive relief. Further, Plaintiffs fail to specify what injunctive relief they seek. OPS has been eliminated and Plaintiffs cannot recover their previous jobs. To the extent they seek injunctive relief in the form of sworn deputy positions at the Sheriff's Department, legislative immunity would still apply as to the County since the Sheriff's Department is a separate entity. (*Frank, supra,* 149 Cal.App.4th at pp. 810-811.) It is clear that Plaintiffs' action is primarily for money or damages, not injunctive relief. Section 814 may not be applied in such a way as to circumvent the legislative policy of 818.2. (*Schooler v. State of California* (2000) 85 Cal.App.4th 1004, 1013.)

Second, Plaintiffs contend that section 818.2 does not bar liability for failure to discharge a mandatory duty. According to Plaintiffs, the County had a mandatory duty to comply with FEHA and thus, its actions were not immune under section 818.2. We disagree. The rule is that the governmental immunity provided by statute will override a liability created by a statute imposing general liability for tortious conduct. The absolute immunity granted under section 818.2 precludes the imposition of liability based upon statutes such as FEHA. (*Gibson v. County of Riverside* (C.D. Cal. 2002) 181 F.Supp.2d 1057, 1086.)

8

The California Supreme Court's opinion in *Caldwell v. Montoya* (1995) 10 Cal.4th 972 (*Caldwell*), illustrates this point. In *Caldwell,* the court was faced with the question of whether members of a school board were immune from liability for voting to terminate the employment of the school district superintendent even when the complaint alleged race and age discrimination in violation of FEHA. (*Id.* at p. 975.) The high court held that section 820.2 provided immunity to the school board members. Under section 820.2, a public employee exercising discretion vested in him was not liable for a resulting injury, "[e]xcept as otherwise provided by statute[.]" (§ 820.2.) The court held that section 820.2's limiting phrase " '[e]xcept as otherwise provided by statute,' " did not permit a FEHA claim against the board members. (*Id.* at p. 985.)

The court reasoned that the intent of the Tort Claims Act, of which sections 820.2 and 818.2 are a part, was " ' "not to expand the rights of plaintiffs in suits against governmental entities [or employees], but to confine potential governmental liability to rigidly delineated circumstances: immunity is waived only if the various requirements of the [A]ct are satisfied." ' " (*Caldwell, supra,* at p. 985.) Thus, "specific immunities should prevail over general rules of actionable duty." (*Ibid,* italics omitted.) Put another way, "immunity [under the Tort Claims Act] cannot be abrogated by a statute which simply imposes a general legal duty or liability on persons, including public employees. Such a statute may indeed render the employee liable for his violations unless a specific immunity applies, but it does not remove the immunity. This further effect can only be achieved by a clear indication of legislative intent that statutory immunity is withheld or withdrawn in the particular case." (*Id.* at p. 986, italics omitted.)

The high court held that FEHA only prohibits employment discrimination by both public and private employers and provides civil remedies when its provisions are violated. FEHA contains no indicia of an additional intent that individual public officials or employees may be sued despite a specific statutory immunity that would otherwise apply in a particular case. Hence, FEHA did not abrogate section 820.2's specific grant of immunity to public employees for their discretionary acts, despite its limiting language. (*Caldwell, supra,* at p. 986.)

9

The court's reasoning in *Caldwell* applies with even more force here, since the immunity conferred under section 818.2 has no limiting language. It is an absolute immunity rather than a conditional one. (§ 818.2; *Gibson v. County of Riverside, supra,* 181 F.Supp.2d at p. 1086.) There is no reason to allow FEHA to abrogate the absolute immunity conferred by section 818.2 when it does not with respect to the limited immunity under section 820.2.

Third, Plaintiffs contend that the second through thirteenth causes of action are not based on the County's legislative act, but instead on the individual employment actions directed toward each of the individual Plaintiffs. Plaintiffs argue, "[a]s Appellants' employer during the transition process from OPS officers to Deputy Sheriffs, Defendants were required to conduct themselves under the statutory mandates created by FEHA, POBRA, and their own Civil Service Rules." According to Plaintiffs, the ordinance did not direct the County to deny them an administrative appeal from demotion or deny them access to adverse comments in their personnel files or improperly meddle in their personal financial records. These actions were not part of the County's legislative enactment.

This argument lacks merit. The legislative immunity extends beyond the adoption of the enactment to its implementation. (*Nunn v. State of California* (1984) 35 Cal.3d 616, 622.) Plaintiffs' complaint is directed towards the County's adoption of the ordinance and its subsequent implementation. There were no allegations to show that Plaintiffs' claims stem from individualized employment decisions. They each lost their jobs as OPS officers as a result of a decision to eliminate the entire department. They then had to meet the Sheriffs' Department's hiring criteria to become deputy sheriffs. This argument is merely an attempt to circumvent the legislative immunity granted under section 818.2.

Lastly, Plaintiffs contend in their reply brief that the ordinance amending the Los Angeles County Code to eliminate OPS was not an "enactment" within the meaning of section 818.2. Plaintiffs are wrong. Section 810.6 defines an "enactment" to include an

10

ordinance.[4] (*See also San Diego City Firefighters, Local 145 v. Board of Administration Etc.* (2012) 206 Cal.App.4th 594, 607 [ordinance is enactment under section 818.2].)

Because we find the County is immunized against Plaintiffs' FEHA claims, we need not address Plaintiffs' remaining arguments that they have stated a cause of action for FEHA. Even if they had, *Caldwell* explains that the immunity provided by the Tort Claims Act is not removed absent a specific legislative intent to do so. FEHA contains no such language.

## III.    Causes of Action 7-12:  Violations of POBRA

In the seventh through twelfth causes of action, Plaintiffs allege violations of POBRA, which sets forth a list of basic rights and protections afforded to all peace officers in the state of California.  (§ 3300, et seq.)  Plaintiffs allege that certain provisions of POBRA were violated when the County decided to dissolve OPS and use the Sheriff's Department instead.  In particular, Plaintiffs allege:

- Plaintiffs were interrogated without benefit of having a representative present in violation of  section 3303, subd. (i) (Seventh Cause of Action);

- Punitive action was taken against Plaintiffs by dismissing them from OPS, demoting them to the position of Custody Assistant, and reducing their salary without benefit of an administrative appeal in violation of section 3304(b) (Eighth Cause of Action);

- Adverse comments were placed in Plaintiffs' personnel files without allowing them to read and sign the documents in violation of section 3306.5 (Ninth Cause of Action);

- Plaintiffs were required to sign a waiver in order to view their own personnel files in violation of section 3306.5 (Tenth Cause of Action);

---

[4]    We take judicial notice of documents, submitted by Defendants on July 22, 2013, which demonstrate that the Board of Supervisors' vote to eliminate OPS was implemented by a formal ordinance.

- Plaintiffs' continued employment was conditioned on their submission to polygraph examinations in violation of section 3307 (Eleventh Cause of Action);

- Plaintiffs' financial records were required to be produced for purposes of job assignment and personnel actions in violation of section 3308 (Twelfth Cause of Action).

These causes of action are alleged against both the Sheriff's Department and the County. Plaintiffs contend POBRA applies because the County is the employer for both OPS and the Sheriff's Department. As such, Plaintiffs' change from OPS employees to Sheriff's Department employees was merely a "lateral" transfer from one department of the County to another. Notwithstanding the fact that the County is immunized from these claims and that the County and the Sheriff's Department are separate entities, these arguments have previously been litigated and decided in the federal district court[5] and affirmed by the Ninth Circuit in *Esparza v. County of Los Angeles* (9th Cir. June 12, 2013, No. 11-56523) 527 Fed.Appx.638 [2013 U.S. App. Lexis 11817]. Accordingly, Plaintiffs are collaterally estopped from raising them in this action.

Plaintiffs filed a complaint in federal district court on March 28, 2011, against Defendants and Los Angeles County Sheriff Leroy David Lee Baca[6] for violations of FEHA, POBRA, and 42 U.S.C. § 1983 (section 1983). As in this case, Plaintiffs alleged "that they were retaliated against and discriminated against because of their participation in a previous lawsuit against the County of Los Angeles for racial discrimination, *Frank v. County of Los Angeles,* 149 Cal.App.4th 805 (2007)." Defendants moved to dismiss the first amended complaint under Federal Rule of Civil Procedure 12(b)(6). After the matter was fully briefed, the district court determined that oral argument was unnecessary and issued its decision based on the papers.

---

[5] The trial court took judicial notice of the district court's opinion and it is a part of the record on appeal.

[6] Sheriff Baca was dismissed as a defendant in a first amended complaint.

The district court dismissed Plaintiffs' section1983 claim with prejudice and declined to exercise supplemental jurisdiction over the remaining state claims, dismissing them without prejudice. Plaintiffs' section 1983 claim was based on the premise that they were deprived of a property interest in employment with the OPS without due process of law as guaranteed under the U.S. Constitution. According to Plaintiffs, the property interest in their OPS employment was secured under POBRA and the Civil Service Rules. The district court found that "neither source vests Plaintiffs with a property interest in continuing employment where the Los Angeles County Board of Supervisors, exercising its legislative authority, eliminates an entire department." The district court reasoned as follows:

> "Plaintiffs argue that '[a]s non-probationary, full-time police officers' at OPS, the Procedural Bill of Rights Act provided a property interest in their employment that necessarily included the right to an administrative hearing. However, the Procedural Bill of Rights Act protects the rights of individual officers under investigation by their 'employing public safety department' for job-related misconduct. *See* Gov't Code §§3303, 3304(b), 3307.5, 3308; [Citations]. The Procedural Bill of Rights Act does not purport to immunize peace officers from job loss resulting from departmental eliminations, and it does not grant peace officers the right to a hearing prior to such an elimination.

> "Plaintiffs also argue, without any support, that once OPS was eliminated the Procedural Bill of Rights Act somehow guaranteed them positions as deputy sheriffs with the Los Angeles Sheriff's Department. However, in *Frank v. County of Los Angeles,* 149 Cal.App.4th 805, 810-811, 822 (2007), the California Court of Appeal recognized that OPS and the Los Angeles County Sheriff's Department are separate and distinct entities, with separate classifications under the Civil Service Rules, separate hiring guidelines, and separate application procedures. In addition, to the extent Plaintiffs' section 1983 claim is based on the Los Angeles Sheriff's Department's failure to hire them as deputy sheriffs, the law is clear that the Procedural Bill of Rights Act does not apply to hiring decisions. *See Los Angeles*

13

*Police Protective League v. City of Los Angeles,* 35 Cal.App.4th 1535, 1539-40 (1995) (holding that 'the Act does not interfere with a locality's hiring decisions')."

The Ninth Circuit issued a memorandum opinion affirming the district court's decision on July 9, 2013. It held that "[n]othing in either [POBRA] or the Los Angeles County Civil Service Rules entitled Plaintiffs to continued employment or administrative appeal hearings when the Board eliminated OPS. [POBRA] and the Civil Service Rules require administrative hearings only when an officer is being punished, suspended, demoted, or discharged for cause." (*Esparza v. County of Los Angeles, supra,* 2013 U.S. App. Lexis *3.)

Collateral estoppel prevents a litigant from being "subjected to consecutive proceedings raising the same factual allegations." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 351.) It applies in each case where the identical issue has been actually litigated by the same parties (or those in privity with the party) in a prior proceeding which resulted in a final judgment on the merits. (*Lumpkin v. Jordan* (1996) 49 Cal.App.4th 1223, 1229 (*Lumpkin*).) The party asserting collateral estoppels bears the burden of establishing these requirements. (*Ibid.*)

In *Lumpkin*, a Baptist minister was appointed a commissioner of the San Francisco Human Rights Commission by the mayor. He was removed from the post after he gave a series of interviews which indicated that he believed homosexuality to be an "abomination" and that homosexuals should be put to death. The minister cited to the Bible for these beliefs. (*Lumpkin, supra,* at p. 1227.) After his removal, the minister sued the mayor in state court. That case was removed to federal court. The minister amended his complaint in federal court to add the City of San Francisco as a party. The first cause of action stated a claim under FEHA, alleging he had been terminated "solely because of his religious beliefs." In the second cause of action, the minister alleged that the city and the mayor deprived him of the right to exercise his constitutionally protected religious beliefs as guaranteed under section1983.

14

The district court granted summary judgment to the mayor and the city on the federal law claims and declined to exercise its supplemental jurisdiction over the state law claims. (*Lumpkin, supra,* at p. 1228.) The court reasoned that the minister was appointed as a policymaker within the mayor's administration and his " 'remarks regarding homosexuality could reasonably have been interpreted by the Mayor as undermining the very policies of the Commission to promote good will toward all people.' " (*Ibid.*) The court found that the minister was not removed for religious reasons, but for secular ones. He " 'was not removed because he believed in the inerrancy of the Bible; rather, he was removed because his religious beliefs were at odds with the goals of the Commission and disrupted Mayor Jordan's administration.' " (*Id.* at p. 1229.)

The minister appealed the district court's order to the Ninth Circuit and also re-filed his FEHA claims in state court. The state trial court sustained the demurrer on the ground that the federal order was final and operated as collateral estoppel on the issue of whether he was removed for his religious beliefs. The First Appellate District affirmed, holding that the district court found legitimate, nondiscriminatory reasons for removing the minister from the commission, which was a pivotal factual issue in the state FEHA proceedings. The court found that "[o]nce we give collateral estoppel effect to the prior judicial determination that secular as opposed to religious considerations provided the motivation for [the minister's] termination, the outcome of the state FEHA proceedings is preordained." (*Lumpkin, supra,* at p. 1232.)

Likewise, the issues and the parties in this case are identical to those in the federal matter. Plaintiffs do not argue otherwise. It is telling that the arguments set forth in Plaintiffs' appeal mirror those addressed by the district court and the Ninth Circuit.

Instead, Plaintiffs argue that the district court did not "necessarily" decide the applicability of POBRA to Plaintiffs' state claims, it merely held that POBRA did not establish a property interest for federal due process purposes. It is true that the district court's POBRA analysis was made within the context of a section 1983 claim, as was the Ninth Circuit's. However, the holdings in the federal proceedings regarding POBRA are

15

pivotal to Plaintiffs' state claims. The district court held that POBRA does not immunize peace officers from job loss resulting from departmental eliminations, nor does it grant peace officers the right to a hearing prior to such an elimination. The Ninth Circuit echoed the district court when it held that POBRA did not entitle Plaintiffs to employment or administrative hearings when OPS was consolidated with the Sheriff's Department. As in *Lumpkin,* once we give collateral estoppel effect to these holdings, the outcome of the state POBRA proceedings is preordained.

Plaintiffs contest the finality of the district court's decision because at the time the parties submitted their briefing, the matter was on appeal. The Ninth Circuit has affirmed the district court's decision in the interim and there is no question as to its finality for purposes of collateral estoppel. (*Younger v. Jensen* (1980) 26 Cal.3d 397, 411; *Lumpkin, supra,* 49 Cal.App.4th at pp. 1230-1231.)

Plaintiffs further argue that the district court's interpretation of POBRA is not binding on this court, citing to *Qualified Patients Ass'n v. City of Anaheim* (2010) 187 Cal.App.4th 734, 764. *Qualified Patients,* however, merely stands for the proposition that a federal court's interpretation of California law is not binding precedent on state courts. It says nothing about the preclusive effect of a federal court decision based on collateral estoppel. Lastly, Plaintiffs contend the district court's interpretation of POBRA was "not necessary for a determination of Appellants' Section 1983 [claim] because it is settled state Constitutional law that full-time police officers in California who are dismissed for cause are entitled to a pre-deprivation hearing. [Citations.]" This is merely an argument that the district court's decision was wrongly decided. However, " ' "an erroneous judgment is as conclusive as a correct one. [Citations.]" ' " (*Lumpkin, supra,* 49 Cal.App.4th at p. 1232, quoting *White Motor Corp. v. Teresinski* (1989) 214 Cal.App.3d 754, 762-763.)

16

## IV.    Petition for Writ of Mandate

In the petition for writ of mandate, styled as the thirteenth cause of action, Plaintiffs alleged that "[p]ursuant to the Los Angeles County Civil Service Rules, as permanent employees of the County of Los Angeles, Petitioners are entitled to administrative appeal hearings before the Civil Service Commission to challenge their discharges and reductions." Plaintiffs contend they are entitled to the issuance of a writ to compel the Defendants to provide Plaintiffs with appeal hearings. Again, collateral estoppel prevents Plaintiffs from asserting this claim.

The district court held that "[t]he Civil Service Rules also did not guarantee Plaintiffs appeal hearings prior to or subsequent to the elimination of OPS, or guarantee them another sworn position with a separate law enforcement agency. *See* Los Angeles County Civil Service Rules, Rule 18 (addressing 'Suspension, Discharge, Reduction and Resignation' and allowing hearing rights for those terminated or demoted for cause) and Rule 19 (addressing 'Layoffs and Reemployment Lists' and not providing hearing rights)." The district court's holding on this issue is fatal to Plaintiffs' petition.

### DISPOSITION

The judgment is affirmed. Respondents are awarded costs on appeal.


                                        BIGELOW, P. J.

We concur:



        RUBIN, J.



        GRIMES, J.


17

Filed 3/5/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| DAVID ESPARZA et al., | B243496 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC467130) |
| v. | |
| COUNTY OF LOS ANGELES et al., | **ORDER CERTIFYING PUBLICATION** |
| Defendants and Respondents. | (No Change in Judgment) |

THE COURT*:

The opinion in the above entitled matter filed on February 6, 2014, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

\* BIGELOW, P. J.             RUBIN, J.             GRIMES, J.