Filed 11/27/19 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JOYCE CARROLL,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO et al.,<br><br>        Defendants and Respondents. | A155208<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-17-562580)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING;<br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on October 31, 2019, be modified as follows:

1.    On page 11, the last sentence of the second paragraph, beginning, "Questions of retroactivity and remedies, . . . " is changed to:

> "Such questions, however, are not before this court, and *Long*'s reference to the continuing violation doctrine is not controlling here."

2.    On page 17, the last sentence of footnote 13, beginning, "Plaintiff thus cannot recover . . . . " is changed to:

> "Plaintiff thus cannot bring timely claims for relief under *Richards* or *Alch* for violations going back to her retirement in 2000."

The request for clarification is granted and addressed by the above modification.

There is no change in judgment.

1

The petition for rehearing is denied.

Date: _____          _____ P. J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JOYCE CARROLL,<br><br>　　　　Plaintiff and Appellant,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO et al.,<br><br>　　　　Defendants and Respondents. | A155208<br><br>(San Francisco City & County Super. Ct. No. CGC-17-562580) |

Plaintiff Joyce Carroll appeals the trial court's entry of a stipulated dismissal with prejudice of her age discrimination complaint under the Fair Employment and Housing Act (FEHA) (Gov. Code,[1] § 12900 et seq.). The dismissal followed the court's order sustaining defendants' demurrer on the ground that plaintiff did not file a complaint with the Department of Fair Employment and Housing (DFEH) within one year of the date the alleged unlawful employment practice occurred. (§ 12960, subd. (d).) We conclude that plaintiff's disparate treatment and disparate impact claims were timely with respect to the allegedly discriminatory disability retirement payments plaintiff received within one year of the date on which she filed her DFEH complaint. We therefore reverse the judgment.

**BACKGROUND**

Plaintiff was 43 years old when she began working for the City and County of San Francisco (City or defendants). She worked for the City for approximately 15 years before retiring at age 58 due to rheumatoid arthritis. On June 22, 2000, plaintiff applied for disability retirement, and the City granted her request "[s]hortly thereafter." Since

---

[1] Statutory references are to the Government Code unless otherwise stated.

1

then, plaintiff has received monthly disability retirement benefit payments from defendants.

Plaintiff brought a putative class action lawsuit on behalf of herself and others similarly situated, alleging that defendants discriminate on the basis of age in violation of FEHA by providing reduced disability retirement benefits to older employees who took disability retirement after working for the City for less than 22.22 years.

The Charter for the City and County of San Francisco (Charter) contains the formula that defendants use to calculate the benefit for employees who retire due to disability.[2]  Charter section A8.584-3 applies to individuals, like plaintiff, who were classified as miscellaneous employees and who began working for the City after November 1, 1976.  Charter section A8.584-3 provides the following formula for disability benefits for employees whose retirement allowance does not exceed one-third of their average final compensation:  "1 1/2 percent of [the employee's] average final compensation multiplied by the number of years of City service which would be credited to [the employee] were such City service to continue until attainment by [the employee] of age 60."[3]  Under this formula, when an employee has worked for the City for at least 10 years but must retire due to disability, the City credits additional service time to the employee to increase his or her disability retirement benefit if his or her retirement allowance falls below one-third of his or her average final compensation.  However, the City limits this imputed service time to the number of years the disabled employee would have worked for the City had he or she continued City employment until age 60.  Defendants referred to these imputed service years as "bonus years" in the letter to plaintiff explaining her retirement disability calculation.

---

[2] The City first implemented this formula for calculating disability retirement benefits in 1947; the formula has been carried forward without material change in subsequent charter provisions.

[3] Charter section A8.584-3 provides an alternative method to calculate the retirement benefits for employees whose retirement allowance exceeds one-third of their average final compensation.  These employees receive 1.5 percent of their average final compensation for each year of credited service.  (S. F. Charter, § A8.584-3.)

For example, plaintiff retired at age 58 after 15 years of service with two "bonus years," resulting in approximately 17 years of service. Defendants credited her with 16.75 years of service, estimating her retirement benefit to be "equal to 25.125% of her final average salary." In contrast, an employee who was hired at age 18 with 15 years of service and 27 years of imputed service, resulting in a total of 42 years of service, would receive a retirement benefit of 33.33 percent of her final average salary (Charter, § A8.584-3 sets a maximum benefit of one-third). Plaintiff alleges that because Charter section A8.584-3 provides employees who were hired over the age of 40 with "reduced retirement benefit[s]," defendants violate FEHA by intentionally discriminating against these employees on the basis of age and by using a standard policy that has a disparate impact on older employees.

Plaintiff alleged that she became aware that defendants paid her retirement benefits based on her age after seeing an advertisement on or about July 20, 2017, which was more than 17 years after her retirement. She filed her complaint with the DFEH on November 17, 2017.

Defendants demurred, arguing that the statute of limitations barred her claims because she failed to timely file an administrative charge with the DFEH. The court sustained the demurrer with leave to amend to allow the substitution of a new named representative to properly represent the class. Plaintiff appealed.[4]

---

[4] Plaintiff requests that we take judicial notice under Evidence Code sections 452, subdivision (c) and 453 of the originally-enacted version of the California Fair Employment Practices Act, Labor Code former section 1410 et seq. (Stats. 1959, ch. 121, § 1, p. 1999 et seq.); the California Law Revision Commission, A Study relating to Sovereign Immunity (Jan. 1963); and the California Law Revision Commission, Recommendation relating to Sovereign Immunity No. 1 - Tort Liability of Public Entities and Public Employees (Jan. 1963). As defendants do not oppose this request, we will grant it.

**DISCUSSION**

## I.      Standard of Review

When a trial court sustains a demurrer, we independently review the complaint to determine whether it states a valid cause of action, accepting all factual allegations as true.  (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.)  We construe the allegations liberally and draw all reasonable inferences in the plaintiff's favor.  (*Coleman v. Medtronic, Inc.* (2014) 223 Cal.App.4th 413, 422.)  " 'A demurrer based on a statute of limitations will not lie where the action may be, but is not necessarily, barred.  [Citation.] In order for the bar of the statute of limitations to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred.' "  (*Guardian North Bay, Inc. v. Superior Court* (2001) 94 Cal.App.4th 963, 971–972.)  When a court sustains a demurrer without leave to amend, we review for abuse of discretion the determination that amendment could not cure the defects, reversing only if the plaintiff bears his or her burden of establishing a reasonable possibility that amendment could cure the defects.  (*Brown v. Deutsche Bank National Trust Co.* (2016) 247 Cal.App.4th 275, 279.)

## II.      FEHA

FEHA is a comprehensive statutory scheme.  (§§ 12900–12996.)  Section 12920 declares it the "public policy" of California to "protect and safeguard" the rights of employees against discrimination.  It also states that "the practice of denying employment opportunity and discriminating in the terms of employment . . . foments domestic strife and unrest, deprives the state of the fullest utilization of its capacities for development and advancement, and substantially and adversely affects the interests of employees, employers, and the public in general."  The statute concludes:  "It is the purpose of this part to provide effective remedies that will eliminate these discriminatory practices."

Plaintiff argues that defendants' payment of disability retirement benefits is discriminatory on the basis of age, in violation of FEHA.  Under section 12940, subdivision (a), it is unlawful "[f]or an employer, because of the . . . age . . . of any

4

person, . . . to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

Defendants demurred to plaintiff's complaint on the ground that it was barred by the one-year statute of limitations for filing an administrative complaint with DFEH. Compliance with the statute of limitations for filing a DFEH complaint is a prerequisite to a civil action for damages under FEHA (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 63 (*Morgan*)), and the statute of limitation runs "from the date upon which the alleged unlawful practice or refusal to cooperate occurred." (§ 12960, subd. (d), italics omitted; *Morgan*, at p. 63). We consider whether plaintiff's disparate treatment and disparate impact claims were timely under FEHA.

## III.    The Disparate Treatment Claim

### A.

The parties disagree as to what triggered the running of FEHA's limitations period. Defendants contend that the limitations period began running in 2000 when they granted plaintiff's request for disability retirement. Plaintiff argues that her disparate treatment claim is timely under what she calls the "continuous accrual doctrine"; the theory underlying her argument is that each discriminatory disability retirement check she received constituted a new FEHA violation.[5] We thus must decide whether an unlawful employment practice occurred only when defendants granted plaintiff's request for disability retirement benefits or whether an unlawful practice occurred each time plaintiff received an allegedly discriminatory disability retirement check. For reasons

---

[5] "Generally speaking, continuous accrual applies whenever there is a continuing or recurring obligation: 'When an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period.' [Citation.] Because each new breach of such an obligation provides all the elements of a claim—wrongdoing, harm, and causation [citation]—each may be treated as an independently actionable wrong with its own time limit for recovery. [¶] However, unlike the continuing violation doctrine, which renders an entire course of conduct actionable, the theory of continuous accrual supports recovery only for damages arising from those breaches falling within the limitations period." (*Aryeh v. Canon Bus. Sols., Inc.* (2013) 55 Cal.4th 1185, 1199.)

explained below, we believe that an unlawful event occurred each time plaintiff received a discriminatory payment, such that a new limitations period applies to each allegedly discriminatory check.

The parties do not cite California authority directly addressing whether each paycheck rendered pursuant to an alleged discriminatory compensation or benefits scheme is separately actionable under FEHA.[6]  We thus begin by reviewing relevant caselaw addressing accrual of the limitations period under FEHA.

We start with the unremarkable premise that an employee can sue over discriminatory acts that occur within the one-year period prior to the employee's filing of a DFEH complaint.  (§ 12960, subd. (d).)  In *Morgan*, for example, the court addressed whether the statute of limitations barred a plaintiff's suit challenging numerous alleged retaliatory hiring decisions that occurred in 1995 and 1996 when the plaintiff filed his DFEH complaint in April 1997.  The court found that each of the decisions not to hire the plaintiff was a discrete, allegedly discriminatory act, and that the plaintiff's challenge to the decisions after April 1996 was timely.  (*Morgan*, *supra*, 88 Cal.App.4th at pp. 63–67.)  In contrast, the plaintiff's challenge to the decisions that occurred before April 1996 was time-barred.  (*Ibid.*; accord *National Railroad Passenger Corp. v. Morgan* (2002) 536 U.S. 101, 113 (*National Railroad*) ["The existence of past acts and the employee's

---

[6] Our Supreme Court has recognized that the language of California's Equal Pay Act (Labor Code, § 1197.5) embodies a theory of continuous accrual under which a claim can be made for the payment and recovery of unequal wages paid within the Equal Pay Act's limitations period.  (*Jones v. Tracy School Dist.* (1980) 27 Cal.3d 99, 105–107.)

prior knowledge of their occurrence . . . does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory"].)[7]

The leading California case on the application of FEHA's statute of limitations is *Romano v. Rockwell Internat. Inc.* (1996) 14 Cal.4th 479 (*Romano*). In *Romano*, the Supreme Court addressed whether FEHA's statute of limitations ran from an employee's termination date or from the date the employer conveyed to the plaintiff its alleged discriminatory and retaliatory decision to terminate him. The employer in *Romano* informed the plaintiff in December 1988 that his employment would terminate in May 1991, but the plaintiff continued to work for the defendant for more than two years. (*Id.* at pp. 484–485.) The Supreme Court rejected the employer's argument (which relied on title VII of the Civil Rights Act of 1964 (Title VII) (42 U.S.C. § 2000e et seq.)). and federal authorities) that the plaintiff's FEHA claims accrued in December 1988 when he was informed of the employer's discharge decision. (*Romano*, at pp. 484–485.) Looking first to the language of FEHA, the court noted that the unlawful employment practice at issue was the employee's discharge, and suit must be brought after the unlawful practice "occurred." (*Roamno,* at pp. 492–493.) The court then reasoned that requiring the plaintiff to sue when he was first notified of the discharge decision would reduce any chance of conciliation and encourage premature litigation. (*Id.* at p. 494.) Finally, the

---

[7] *National Railroad* considered whether discrete discriminatory or retaliatory acts were subject to the continuing violation doctrine, pursuant to which an employer may be liable for actions against an employee that take place outside of the limitations period if these actions are sufficiently linked to unlawful conduct that occurred within the limitations period. The United States Supreme Court concluded that discrete acts "are not actionable if time-barred, even when they are related to acts alleged in timely filed charges," and held that the continuing violation doctrine applies only to hostile work environment claims. (*National Railroad*, *supra*, 536 U.S. at pp. 113, 116–118.) California law diverges with *National Railroad* on this issue. In *Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 823 (*Richards*), our Supreme Court held that the continuing violation doctrine applies to individual claims for failure to accommodate and disability harassment. Subsequently, in *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1058–1059, the Court held that the continuing violation doctrine was not limited to individual suits alleging hostile work environment or disability accommodation claims and instead may be applied in retaliation suits alleging a retaliatory course of conduct.

7

court also noted that FEHA "should be interpreted so as to promote the resolution of potentially meritorious claims on the merits." (*Roamno*, at p. 494.) Thus, the court rejected a restrictive interpretation of FEHA and held that plaintiff's FEHA claim accrued on the date of his discharge, not when he was informed of his discharge. (*Romano*, at pp. 495, 499–500.)

Following *Romano*, *McCaskey v. California State Automobile Assn.* (2010) 189 Cal.App.4th 947 (*McCaskey*), reached a similar result. There, the plaintiffs brought disparate impact and disparate treatment age discrimination claims under FEHA alleging that they were fired in 2005 as a result of a discriminatory compensation plan that eliminated reduced sales quotas for older employees, which their employer had adopted in 2001. (*McCaskey*, at pp. 953–955, 975.) Although the plaintiffs had worked under this plan for a number of years, the court held that their FEHA claims accrued upon their termination rather than upon the earlier implementation of the allegedly discriminatory compensation plan. (*McCaskey*, at p. 977.)

*Romano* and *McCaskey* thus recognize that an employer's discriminatory decision to take an unlawful employment act is not actionable only when made but instead when statutorily prohibited acts or practices occur pursuant to that decision. The allegedly unlawful employment practice here is discrimination "in compensation or in terms, conditions, or privileges of employment" (§ 12940, subd. (a)), and we believe this logically occurred when the employer paid the purportedly discriminatory retirement benefits. Plaintiff alleges that each disability retirement check provides her reduced benefits and that age was a substantial motivating factor for the payment of these reduced benefits. As such, she describes repeated discriminatory acts (payment of benefits pursuant to a discriminatory policy), and she may sue over disability retirement payments falling within one year of her filing of a DFEH complaint. This interpretation is consistent with the language of FEHA and the command that we liberally interpret its provisions. (§ 12993, subd. (a); *Romano*, *supra*, 14 Cal.4th at pp. 493–494.)

Federal cases addressing whether paychecks issued pursuant to a discriminatory compensation scheme under Title VII, while not dispositive, are also instructive in this

8

regard.  (*Linsley v. Twentieth Century Fox Film Corp*. (1999) 75 Cal.App.4th 762, 766 [California courts have relied upon federal law interpreting Title VII and the Age Discrimination in Employment Act (29 U.S.C. § 621 et seq.) to interpret FEHA].)

In *Bazemore v. Friday* (1986) 478 U.S. 385, 395–396 (*per curiam*), the United States Supreme Court recognized that when an employer adopts a facially discriminatory pay structure that puts some employees on a lower scale because of race, the employer engages in intentional discrimination under Title VII whenever it issues a check to one of these disfavored employees.  In *Bazemore*, the defendant originally segregated employees into a white and Negro branch with the latter receiving less pay but merged the branches in 1965.  (*Id.* at pp. 389–391.)  After Title VII was extended to public employees in 1972, black employees sued, claiming that pay disparities attributable to the old dual pay scale persisted.  (*Bazemore*, at p. 391.)  The lower court held that the defendant had no duty to eradicate salary disparities between workers that had their origin prior to the date Title VII was made applicable to public employees.  The United States Supreme Court disagreed.  "Each week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII, regardless of the fact that this pattern was begun prior to the effective date of Title VII."  (*Bazemore*, at pp. 395–396; accord *Pollis v. New School for Social Research* (2d Cir. 1997) 132 F.3d 115, 119.)

The United States Supreme Court addressed compensation discrimination again in *Ledbetter v. Goodyear Tire & Rubber Co.* (2007) 550 U.S. 618 (*Ledbetter*).  Lilly Ledbetter alleged that she received negative performance evaluations because of her sex and her pay continued to be affected by those past reviews; on that basis, she claimed sex discrimination in pay in violation of Title VII and the federal Equal Pay Act (29 U.S.C. § 206(d)).  (*Ledbetter*, at p. 622.)  Because each relevant evaluation occurred more than 180 days before Ledbetter filed her U.S. Equal Employment Opportunity Commission (EEOC) charge, she relied on a paycheck accrual rule and argued that each time she was paid less than her similarly situated male colleagues as a result of the discriminatory evaluations, the payment was a discrete wrong that triggered a new limitations period.  (*Id.* at p. 625.)  The majority disagreed, holding that Ledbetter could not sue based solely

9

on the present effects of past discriminatory pay-setting evaluations that occurred outside of the limitations period.  (*Id.* at p. 621.)  The majority also limited *Bazemore* to circumstances involving a pay system that is facially discriminatory or not neutrally applied.  (*Id.* at pp. 635–636.)  Justice Ginsburg, joined by three other justices, wrote a vehement dissent.  (*Id.* at p. 645 [an "unlawful practice is the *current payment* of salaries infected by gender-based (or race-based) discrimination—a practice that occurs whenever a paycheck delivers less to a woman than to a similarly situated man"].)

Congress responded with the Lilly Ledbetter Fair Pay Act of 2009 (FPA) (Pub.L. No. 111–2, § 4 (January 29, 2009) 123 Stat. 6.)[8], which, with respect to discrimination in compensation[9], states in pertinent part:  "[A]n unlawful practice occurs . . . when a discriminatory compensation decision or other practice is adopted, when a person becomes subject to a discriminatory compensation decision or other practice, or when a person is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice."  The FPA provides for recovery of back pay for up to two years preceding the filing of an EEOC charge.  (*Id.*, § 3 (January 29, 2009) 123 Stat. 5.)  In the FPA, Congress characterized *Ledbetter* as undermining "bedrock principles of American law for decades" and being "at odds with the robust application of the civil rights laws that Congress intended."  (*Id.*, § 2 (January 29, 2009) 123 Stat. 5.)  Thus, federal law pre-FPA recognized that each payment of wages pursuant to a facially discriminatory compensation policy or a policy that is not neutrally applied was actionable, and the law now extends to each compensation payment resulting from a discriminatory decision or practice.

---

[8] The FPA also amended the Age Discrimination in Employment Act of 1967 (29 U.S.C. §§621–634) and modified the Americans with Disabilities Act of 1990 (42 U.S.C. §§12101 et seq.) and the Rehabilitation Act of 1973 (29 U.S.C. §701 et seq.). (Pub.L. No. 111–2, § 5 (January 29, 2009) 123 Stat. 6, 7.)

[9] Federal law considers the payment of retirement benefits to be compensation. (*Arizona Governing Committee v. Norris* (1983) 463 U.S. 1073, 1079.)

Relying on legislative history and finding No. 4 of the FPA (Pub.L. No. 111–2, § 2 (January 29, 2009) 123 Stat. 5), which provides that "[n]othing in this Act is intended to change current law treatment of when pension distributions are considered paid," federal courts post-FPA have distinguished between pensions and wages and have found that each pension check does not give rise to a separate claim because pensions are considered to be paid at retirement. (*Zimmelman v. Teachers' Retirement System of City of New York* (S.D.N.Y. March 8, 2010, No. 08 Civ. 6958) 2010 U.S. Dist. LEXIS 29791, \*28–\*30, citing H.R.Rep. No. 110-237, 1st Sess. (2007) & *Florida v. Long* (1988) 487 U.S. 223 (*Long*)); *Abramson v. Board of Educ. of Middle Country School Dist. No. 11* (E.D.N.Y. June 27, 2012, No. 11-CV-3322) 2012 U.S. Dist. LEXIS 89410, \*12–\*15; Pub.L. No. 111–2, § 4 (January 29, 2009) 123 Stat. 6.) But California does not appear to adopt this fixed construction for when pensions are considered paid, instead recognizing that the statute of limitations to challenge periodic pension payments to which a plaintiff has an established right runs from when each periodic payment becomes due. (*Dryden v. Board of Pension Comm'rs.* (1936) 6 Cal.2d 575, 580–581 [pension benefits unlawfully withheld]; *Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340, 348, 379-382 [following *Dryden* to hold that, "under the continuous accrual theory, the statute of limitations for periodic payments such as [t]eachers' monthly retirement benefits here commenced with the due date of each payment"].)

Nor do we believe that this case is governed by the statement in *Long* that "[i]t is not correct to consider payments of benefits based on a retirement that has already occurred as a sort of continuing violation." (*Long*, *supra*, 487 U.S. at p. 239.) In making this statement, *Long* confined its analysis to whether a future increase in pension benefits was an appropriate remedy under Title VII where benefits were calculated using sex-based actuarial tables before the practice was declared illegal. (*Long*, at pp. 237–240.) The court in *Long* determined that this remedy was inequitable because it jeopardized many state pension funds and declined to recognize a principle of equitable relief that ignored the essential assumptions of actuarially funded pension plans. (*Id.* at p. 239.) Questions of retroactivity and remedies, however, are not currently before this court.

11

Next, while defendants assert that "courts have explicitly rejected the proposition that each alleged discriminatory payment by an employer creates a new cause of action under FEHA," they cite only *Nero v. BAE Systems, Inc.* (N.D. Cal. Nov. 25, 2013) 2013 U.S. Dist. LEXIS 167503 (*Nero*) in support of this contention. In *Nero*, plaintiff filed FEHA discrimination and harassment claims in state court, alleging that he was demoted from his position as foreman because of his race. (*Id.* at *1–*3.) At the hearing on the defendant's motion for summary judgment, the plaintiff argued that his claims were timely under the FPA because he continued to perform foreman duties after he was demoted and each failure to pay him an appropriate wage for his managerial duties constituted a new act of discrimination. (*Nero*, at *4–*7.) Defendant removed the case on the basis that the plaintiff's reliance on the FPA showed that his claims were actually Title VII claims. (*Nero*, at *7–*8.) In denying the plaintiff's motion to remand, the district court found that the plaintiff's claims relied on a substantial federal question under Title VII and were not brought under California law because the FPA was not part of FEHA. (*Nero*, at *18–*19.) We do not find *Nero* to be persuasive because the court there accepted defendant's argument that the plaintiff's FEHA claims were time-barred with limited analysis of the issue, holding without explanation that "the importation of the [FPA] limitations provision changes [the FEHA cause of action] into a federal claim." (*Nero*, at *18.)

Further, it appears that other state courts, in applying their states' civil rights laws, have determined that an unlawful or discriminatory practice occurs each time an employee receives a discriminatory paycheck. In *Alexander v. Seton Hall University* (N.J. 2010) 8 A.3d 198 (*Alexander*), female professors brought an action alleging unequal pay on the basis of sex and age in violation of New Jersey's Law Against

12

Discrimination[10] (N.J.S.A. §§ 10:5–1 to 10:5–49). (*Alexander*, at pp. 199–200.) The lower court dismissed the professors' claims as untimely because they had not been filed within two years of the discriminatory pay-setting decision, and the New Jersey Supreme Court reversed. (*Id.* at pp. 199–200.) The court concluded that "[e]ach payment of such discriminatory wages . . . constitutes a renewed separable and actionable wrong that is remediable under the [wage discrimination law]." (*Id.* at p. 207.) The court therefore held that the professors could pursue claims with respect to the paychecks they received in the two years immediately preceding the lawsuit. (*Ibid.*)

In *Zuurbier v. MedStar Health, Inc.* (D.C.Ct.App. 2006) 895 A.2d 905, a female physician alleged pay discrimination under the District of Columbia Human Rights Act (D.C. Code §§ 2–1401.01 et seq.). The District of Columbia Court of Appeals concluded that each discriminatory paycheck was a discrete act subject to its own limitations period, and the court limited the plaintiff's recovery to the three paychecks received within the applicable limitations period. (*Zuurbier,* at pp. 910–914.)

More recently, in *Dindinger v. Allsteel, Inc.* (Iowa 2015) 860 N.W.2d 557, the Iowa Supreme Court similarly held that an employee could sue under the Iowa Civil Rights Act (ICRA) (Iowa Code § 216) for each discriminatory paycheck received within the limitations period. Similar to FEHA, the governing statute of limitations provided: " '[A] claim under this chapter shall not be maintained unless a complaint is filed with the [Iowa Civil Rights C]ommission within three hundred days after the alleged discriminatory or unfair practice occurred.' " (*Dindinger*, at p. 567, citing Iowa Code § 216.15(13).) The court first held that the ICRA's language prohibiting employers from "otherwise discriminat[ing] in employment" (*Dindinger*, at p. 567) prohibited wage

---

[10] New Jersey's Law Against Discrimination makes it an unlawful employment practice to "discriminate against [a protected employee] in *compensation* or in terms, conditions or privileges of employment," and such claims are governed by the two-year statute of limitations in New Jersey Statutes section A.2A:14-2(a) ("Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this State shall be commenced within two years next after the cause of any such action shall have accrued."). (*Alexander*, *supra*, 8 A.3d. at pp. 202–203, 207.)

discrimination based on sex, and then, rejecting the position endorsed by the *Ledbetter* majority that each paycheck was merely an effect of prior discrimination where the discriminatory pay setting decision occurred outside the limitations period, the court concluded that a discriminatory practice occurred each time an employee received a discriminatory paycheck.  (*Id.* at pp. 572–573.)  Out-of-state authorities thus support our conclusion that discriminatory payments within the limitations period are actionable wrongs under FEHA.[11]

**B.**

Plaintiff additionally contends that her putative class action disparate treatment claim is timely under a "continuing violation" theory, although she is careful to clarify that she seeks to proceed only under the variation of the "continuing violation" doctrine espoused in *Alch v. Superior Court* (2004) 122 Cal.App.4th 339 (*Alch*) pertaining to claims alleging a systemic policy of discrimination, and not on the theory involving discrete acts toward an individual employee addressed in *Richards*.

As our Supreme Court observed in *Richards*, *supra*, 26 Cal.4th at p. 813, the term "continuing violation doctrine" refers loosely to "a number of different approaches, in different contexts and using a variety of formulations, to extending the statute of limitations in employment discrimination cases."  In *Richards*, a disabled employee resigned after a five-year period during which she claimed her employer was unwilling to accommodate her disability, and the question was whether her employer was liable for actions that took place outside the limitations period if the actions were sufficiently

---

[11] See also *State v. Commission on Human Rights & Opportunities* (Conn. 1989) 559 A.2d 1120 [each payment of retirement benefits constituted a separate discriminatory act in violation of the state's antidiscrimination statute where state employer engaged in the discriminatory practice of paying smaller pension benefits to males as a result of use of gender-based actuarial tables].)  *Prairie View A & M University v. Chatha* (Tex. 2012) 381 S.W.3d 500, 510 is an exception.  Relying on a prior endorsement of federal authority holding that Title VII's statute of limitations runs from the date of the employer's discriminatory decision, the Texas Supreme Court held that the Texas Commission on Human Rights Act's statute of limitations runs from the date of the employer's decision to pay discriminatory wages.  (*Chatha*, at pp. 505–510.)

14

linked to unlawful conduct within the limitations period. (*Id.* at pp. 801, 812.) The Supreme Court reasoned that FEHA's statute of limitations should not be interpreted to force upon an employee engaged in the process of seeking reasonable accommodation or ending disability harassment the unappealing choice of resigning at the first sign of discrimination or, on the other hand, persisting in the reconciliation process and possibly forfeiting a valid claim should that process prove unsuccessful. (*Richards*, at p. 821.) Thus, the court decided the statute of limitations began to run when the employee was on notice that further efforts to end her employer's unlawful conduct would be futile. (*Id.* at p. 823.) As formulated in *Richards*, the continuing violation doctrine extends the limitations period for individual claims when acts inside and outside the limitations period are: (1) sufficiently similar in kind; (2) have occurred with reasonable frequency; (3) and have not acquired a degree of permanence. (*Ibid.*)[12]

In contrast, the formulation of the continuing violation doctrine applied in *Alch* provides a legal framework for statute of limitations issues that arise when a plaintiff alleges "a systematic corporate policy of discrimination against a protected class that was enforced during the limitations period, to the detriment of members of the class during that period," where the plaintiff seeks to recover for injury during the limitations period, and "[n]o relief is sought for employer conduct predating the limitations period." (*Alch*, *supra*, 122 Cal.App.4th at p. 370.) In *Alch*, the court was called upon to decide whether *Richards*' futility test rendered the plaintiffs' discrimination claims untimely because the complaint showed that the defendants' policy had been in place for many years. (*Ibid.*)

*Alch* held that *Richards* did not apply to systemic discrimination class action claims and the actions before it could proceed based on allegations of a systemic policy of age discrimination initiated before the limitations period that continued in effect within that period to the detriment of class members who were not chosen for employment or who were discouraged from applying during the limitations period. (*Alch*, *supra*,

_____

[12] Plaintiff disavows the applicability of the continuing violation doctrine adopted in *Richards* and applied in *Yanowitz v. L'Oreal USA, Inc.*, *supra*, 36 Cal.4th at pp. 1056–1059.

122 Cal.App.4th at p. 377.) The court distinguished the legal issues presented in systemic discrimination cases from those at issue in cases such as *Richards* where individual employees seek relief for discrimination inside and outside of the limitations period. (*Id.* at pp. 372–377.) It noted that, in pattern-and-practice class action cases, it is unnecessary to determine whether unlawful actions outside the limitations period should be viewed as part of a single, actionable course of conduct "because no relief is sought for actions outside the limitations period." (*Id.* at p. 375.) The need for permanence is similarly lacking where no relief is sought for acts outside the limitations period and the employer continues to use a systemic policy of discrimination to the detriment of employees within the limitations period. (*Id.* at pp. 375–377.) Thus, the court found that the plaintiffs were not barred from suing over unlawful acts occurring inside the one-year limitations period regardless of the fact that those acts arose from a purportedly entrenched policy that first came into existence in the preceding years. (*Ibid.*)

Plaintiff unequivocally argues that her class action claims proceed under the continuing violation doctrine espoused in *Alch.* Although the plaintiffs in *Alch* did not seek relief for discrimination outside the limitations period, the court repeatedly made clear that class action claims brought under the continuing violation theory it espoused may obtain relief only for discrimination that occurs during the limitations period. (*Alch*, *supra*, 122 Cal.App.4th at p. 370 [systemic discrimination class claims seek "relief for discrimination during the limitations period"]; *id.* at p. 372 ["The employers and the agencies are not liable—and the writers do not claim they are—for discrimination in hiring that occurred more than one year before the complaints in these cases were filed with the Department of Fair Employment and Housing."]; *id.* at p. 377 ["Certainly, the employers and the agencies would not be liable for any discriminatory refusal to refer or refusal to hire that occurred more than one year before the complaints in these cases were filed with the Department of Fair Employment and Housing."]; *ibid.* ["there is no reason an employer should be at liberty to continue to discriminate . . . during the limitations period, simply because it has done so, allegedly, for the past 20 years"]; *ibid.* ["if [defendants] enforced a discriminatory policy during the limitations period, claims are

16

timely filed both by writers who applied for jobs during that period and were rejected, and by writers who were deterred from applying for jobs during that period"].)

Because plaintiff expressly seeks to proceed under *Alch*, the putative class claims are timely if she alleges unlawful acts occurring during the limitations period even if those acts arise from a systematic policy of discrimination that came into existence before then.[13]  (*Alch*, *supra*, 122 Cal.App.4th at p. 377.)  Plaintiff alleges that defendants use a fixed discriminatory policy to pay reduced retirement disability benefits to employees who worked fewer than 22.22 years for the City and began their employment when they were over 40.  She further alleges that defendants used this policy each month by paying reduced disability retirement benefits, including during the limitations period, and this use continued during the limitations period to the detriment of herself and the putative class members.  Thus, the putative class action claim for use of a systemic discriminatory policy during the limitations period to the detriment of the class is timely under *Alch*.[14]

## IV.     The Disparate Impact Claim

Having decided that plaintiff's disparate treatment claim is timely as set forth herein, we turn to her disparate impact claim.  Citing a lack of governing authority in California regarding the accrual of disparate impact claims, the parties agree that *Lewis v.*

---

[13] Plaintiff briefly argues that she can recover for all of the alleged harm she suffered as a result of defendants' acts since her retirement in 2000.  Citing *Aryeh v. Canon Business Solutions, Inc.*, *supra*, 55 Cal.4th at p. 1192 and *Richards*, *supra*, 26 Cal.4th at pp. 818–819, she asserts that the continuing violation doctrine in this state aggregates a series of injuries for purposes of the statute of limitations and converts an entire course of conduct into a single wrong for which a plaintiff can recover.  But *Aryeh* relied on *Richards* when it stated that the continuing violation doctrine allows a plaintiff to aggregate conduct inside and outside the limitations period and recover for that series of injuries, and, again, plaintiff disavows the applicability of the continuing violation doctrine adopted in *Richards*.  (*Id.* at p. 1192.)  Plaintiff thus cannot recover under *Richards* or *Alch* for injuries going back to her retirement in 2000.

[14] Because we conclude that plaintiff's complaint does not show on its face that her claims are untimely and a demurrer should not have been sustained on statute of limitations grounds, we do not address her arguments regarding the single-filing or delayed-discovery rules.

17

*Chicago* (2010) 560 U.S. 205 (*Lewis*) should guide our analysis of whether plaintiff's disparate impact claim is timely.

In *Lewis*, the plaintiffs challenged the City of Chicago's use of written examinations in hiring firefighters, alleging that the use of the written examinations to exclude candidates had a disparate impact on African-American applicants. (*Lewis*, *supra*, 560 U.S. at pp. 208–209.) Prior to the commencement of the limitations period, the city used the results of the written examination to generate a hiring-eligibility list of candidates ranked and grouped by score, and the city subsequently used that list multiple times over several years to randomly select candidates from the top-ranked groupings for advancement to the next stage of the hiring process. (*Ibid.*) Although the plaintiffs failed to timely file an administrative charge challenging the creation of the list itself, they did timely file charges attacking subsequent rounds of hiring done from the list. (*Ibid.*)

Under the relevant provision of Title VII, "a plaintiff establishes a prima facie disparate-impact claim by showing that the employer '*uses* a particular employment practice that causes a disparate impact' on one of the prohibited bases." (*Lewis*, s*upra*, 560 U.S. at p. 212.) The United States Supreme Court thus held that disparate impact claims under Title VII accrue when a discriminatory policy is " 'used' " or applied to cause a disparate impact within the limitations period. (*Lewis*, at pp. 214–215.) *Lewis* thus stands for the proposition that, even if a defendant's decision to adopt the practice would "g[i]ve rise to a freestanding disparate-impact claim," a new actionable violation of Title VII occurs when the defendant "implement[s] that decision down the road"; or, in the words of the statute, when the defendant "uses a practice that causes disparate impact." (*Id.* at pp. 214, 217; see also *City and County of San Francisco v. Fair Employment & Housing Com.* (1987) 191 Cal.App.3d 976, 983 [complaint was timely where the City used a candidate eligibility list to make promotions in the year prior to the lawsuit although the City administered the written test that generated the list before that].)

Plaintiff claims that defendants use an employment policy to pay retirement disability benefits each month and that use of this policy causes a disparate impact on employees who worked fewer than 22.22 years for the City and began their employment

18

when they were over 40, in that such employees receive lower monthly benefits than similarly situated employees who began employment before age 40. Plaintiff thus alleges that defendants' monthly application of an employment policy has a disparate impact; under *Lewis,* then, plaintiff may sue for the payments that occurred within the year prior to the November 17, 2017 filing of her DFEH complaint.

## V.        Government Immunity

Although they did not do so in the trial court, defendants argue on appeal that they are immune from suit pursuant to section 818.2 of the Government Tort Claims Act (the Act) (§§ 810 et seq.). They may present this legal question for the first time on appeal from a dismissal following demurrer. (*Bocanegra v. Jakubowski* (2015) 241 Cal.App.4th 848, 857.)

Section 818.2 provides: "A public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law."[15] This statute is a special expression of discretionary act immunity. (*Morris v. County of Marin* (1977) 18 Cal.3d 901, 911 [section 818.2 applies only to discretionary activity].) As such, acts within legislative or administrative discretion have long enjoyed the shelter of immunity from tort liability whereas mere government "operational" acts do not. (*HFH, Ltd. v. Superior Court of Los Angeles Count*y (1975) 15 Cal.3d 508, 519.) The need for political accountability drives this immunity. "[B]oth constitutional and institutional understandings require that legislative acts, even if improper, find their judicial remedy in the undoing of the wrongful legislation, not in money damages awarded against the state." (*Ibid.*) If section 818.2's immunity applied, the question would be whether FEHA provides a "clear indication of legislative intent" that the otherwise applicable immunity is withdrawn. (*Caldwell v. Montoya* (1995) 10 Cal.4th 972, 986.) We need not reach this question because we find that section 818.2 does not apply.

Plaintiff alleges that defendants "enacted, implemented, and enforced the unlawfully discriminatory retirement provisions at issue here"; however, the injury she

_____

[15] " 'Enactment' means a constitutional provision, statute, charter provision, ordinance or regulation." (§ 810.6.)

19

alleges arises not from the adoption of Charter section A8.584-3 in 1976[16], but instead from the defendants' subsequent enforcement of this provision with respect to her. Section 818.2 does not immunize public entities from damages that result from injuries that arise from the enforcement of a law. The Charter sets forth a formula for disability retirement payments, and plaintiff does not allege facts suggesting that the defendants enforced this provision through any discretionary legislative act when they granted plaintiff's request for disability retirement and later payments thereon.

*Esparza v. County of Los Angeles* (2014) 224 Cal.App.4th 452 (*Esparza*), cited by defendants, does not compel a contrary conclusion. In *Esparza*, peace officers employed by the Los Angeles County Office of Public Safety (OPS) sued when their jobs were terminated due to the Board of Supervisors' vote to enact an ordinance and dissolve OPS and merge its functions with the Los Angeles Sherriff's Department. (*Id.* at pp. 455–457.) The plaintiffs sued, alleging claims under FEHA for race, age, and disability discrimination. (*Id.* at p. 458.) Defendant demurred, relying on section 818.2 immunity. (*Ibid.*) The plaintiffs argued that immunity did not apply because their claims arose from individual employment actions related to the termination after the ordinance was passed. (*Ibid.*) Stating that "legislative immunity extends beyond the adoption of the enactment to its implementation," the court rejected the plaintiffs' argument and found that their complaint was directed at the adoption of the ordinance because each of them lost their jobs as a direct result of the legislative decision to eliminate the entire department. (*Ibid.*)

Defendants assert that *Esparza* bars plaintiff's claim because it stands for the proposition that legislative immunity extends beyond the adoption of an enactment to any actions taken to enforce or implement the law. *Esparza*, however, dealt only with injury directly caused by adoption of an ordinance. Moreover, although *Esparza* cited *Nunn v. State of California* (1984) 35 Cal.3d 616 (*Nunn*) as the authority for its statement that

---

[16] Plaintiff alleges that defendants enacted the Charter provision at issue. The City is a charter city, and, under the California Constitution, "For its own government, a county or city may adopt a charter by majority vote of its electors voting on the question. . . . A charter may be amended, revised, or repealed in the same manner." (Cal. Const., art. XI, § 3, subd. (a).)

legislative immunity extends to implementation, *Nunn* does not categorically hold that acts implementing a law are entitled to legislative immunity. (*Esparza*, *supra*, 224 Cal.App.4th at p.462.)

In *Nunn*, the Supreme Court addressed whether section 818.2 immunized the state from a lawsuit arising from the Bureau of Collection and Investigative Services' alleged negligent failure to timely issue regulations implementing Business and Professions Code former section 7514.1, subdivision (a).[17] The Bureau's eventual promulgation of regulations, as directed by Business and Professions Code former section 7514.1, implemented the statute. The Supreme Court found that the Bureau's promulgation of regulations necessarily involved discretionary "planning" rather than nondiscretionary "operational" decisions. "As such, the quasi legislative implementation of basic legislative decision is protected." (*Nunn*, *supra*, 35 Cal.3d. at p. 622.) In so holding, the Supreme Court distinguished cases where the plaintiff's alleged injury arose from nondiscretionary, operational acts implementing policy decisions. (*Id.* at pp. 622–623.) Thus, governmental immunity applied in *Nunn* only because the implementation that caused injury involved quasi-legislative discretionary acts. Unlike the plaintiffs in *Esparza* or *Nunn*, plaintiff here does not allege that defendants took any legislative or quasi-legislative acts in granting her retirement and enforcing the Charter. Thus, on the face of her complaint, the injury that plaintiff alleges arising from these acts is not subject to section 818.2 immunity.[18]

## DISPOSITION

The judgment is reversed.

---

[17] Business and Professions Code former section 7514.1 stated that "private patrol [employees] shall complete a course of training in the . . . carrying and use of firearms." (*Nunn*, *supra*, 35 Cal.3d at p. 622, citing Bus. & Prof. Code, former § 7514.1, subd. (a), adopted by Stats.1979, ch. 982, § 3, p. 3356.)

[18] Because we find that plaintiff's claims are not fully barred by the statute of limitations or by section 818.2, it is unnecessary to address plaintiff's arguments regarding leave to amend her complaint.

21

_____
BROWN, J.

WE CONCUR:


_____
POLLAK, P. J.



_____
TUCHER, J.


*Carroll v. City and County of San Francisco et al.* (A155208)

22

Trial Court: San Francisco City & County Superior Court

Trial Judge: Hon. Mary E. Wiss

Counsel:

Aiman-Smith & Marcy, Randall B. Aiman-Smith, Reed W. L. Marcy, Hallie L. Von Rock, Carey A. James, Brent A. Robinson, for Plaintiff and Appellant.

Dennis J. Herrera, City Attorney, Katherine H. Porter, Joseph M. Lake, Deputy City Attorneys, for Defendants and Respondents.

*Carroll v. City and County of San Francisco et al.* (A155208)