Filed 3/6/26 (unmodified opn. attached)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| LORI NICHOLS et al., | C100433 |
| Plaintiffs and Appellants, | (Super. Ct. No. CVPO19-01872) |
| v. | |
| MUHAMMAD ALGHANNAM, | ORDER MODIFYING OPINION |
| Defendant and Respondent. | [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed in this case on February 18, 2026, be modified as follows:

1. On page 12, to the three references to "Civil Code section 3333.2, subdivision (c)(2)," add "former" before "subdivision" so that the references read: "Civil Code section 3333.2, former subdivision (c)(2)."

2. On page 12, following the first reference to Civil Code section 3333.2, former subdivision (c)(2), add as footnote 4 the following footnote, which will require renumbering of all subsequent footnotes:

1

**4** Civil Code section 3333.2, former subdivision (c)(2) was renumbered as subdivision (j)(4) effective January 1, 2023.  (Stats. 2022, ch. 17, § 3.)

There is no change in the judgment.


/S/

_____

RENNER, Acting P. J.


/S/

_____

MESIWALA, J.


/S/

_____

FEINBERG, J.

Filed 2/18/26 (unmodified version)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| LORI NICHOLS et al., | C100433 |
| Plaintiffs and Appellants, | (Super. Ct. No. CVPO19-01872) |
| v. | |
| MUHAMMAD ALGHANNAM, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Yuba County, Stephen W. Berrier, Judge. Affirmed.

Nicholas R. Deal and Glenn A. Ellis (admitted *pro hac vice*) for Plaintiffs and Appellants.

Cole Pedroza, Kenneth R. Pedroza, Nathan J. Novak; Low McKinley & Salenko, Steven M. McKinley, and George E. Washington for Defendant and Respondent.

Plaintiffs Lori Nichols, Randy Robinson, Darren Robinson, and Michelle Robinson (together, plaintiffs) appeal from a judgment of dismissal entered after the trial court sustained the demurrer of defendant Muhammad Alghannam, M.D. (Alghannam) to their fifth amended complaint without leave to amend. Plaintiffs sued Alghannam and others for professional negligence and elder abuse following the death of their mother, Sandra Robinson (Sandra). The trial court sustained Alghannam's demurrer on the grounds that plaintiffs' negligence causes of action were time-barred and their complaint failed to allege conduct that qualified as elder abuse. We affirm.

## I. BACKGROUND

Sandra had an implanted Medtronic infusion pump, which was managed by Alghannam. The pump delivered a continuous infusion of fentanyl for pain management and allowed Sandra to self-administer additional doses through the use of an actuator.

Sandra was referred to Dr. Michael Fahey of The Fremont-Rideout Health Group doing business as Rideout Health (Rideout) for an apparently unrelated health challenge involving difficulty swallowing and substantial weight loss. Fahey recommended laparoscopic paraesophageal hernia repair with feeding tube placement. The surgery was performed on or about July 23, 2018.

Following the surgery, Sandra continued to receive infusions of fentanyl through her pain pump and continued to self-administer fentanyl through the pain pump's actuator. Rideout's clinical staff observed changes in Sandra's mental status, which were brought to Fahey's attention. The actuator was not removed. Sandra died from an overdose of fentanyl on August 4, 2018.[1]

One of Sandra's daughters commenced the instant action on November 4, 2019. The initial complaint asserted the following causes of action against Rideout and Does 1

---

[1] Plaintiffs' opening brief states that Sandra died on July 23, 2018. We will assume the actual date of death was August 4, 2018, the date alleged in the pleadings.

through 50: (1) professional negligence, (2) lack of informed consent, (3) wrongful death, and (4) loss of consortium. The initial complaint did not include any allegations concerning Alghannam or the pain pump.

The pleadings were amended several times over the next couple of years. Sandra's other adult children joined the action as plaintiffs, and additional medical professionals were named as defendants. The pain pump made its first appearance in plaintiffs' third amended complaint, which was filed on September 2, 2020. Alghannam made his first appearance in the fourth amended complaint, which was filed on July 31, 2023.

The operative fifth amended complaint was filed on November 2, 2023. The fifth amended complaint focuses primarily on Fahey's role as treating physician, both before and after surgery. As relevant here, the fifth amended complaint alleges Rideout's hospital policy "required consultation with the doctor managing the pump and identifying the strength, dose, frequency and any additional parameters that clarify the safe use of the implanted device." Fahey is alleged to have violated Rideout's policy by failing to consult with Alghannam before Sandra's surgery. "As a result," the fifth amended complaint says, "Dr. Fahey did not know the strength, dose, frequency or functionality of [Sandra's] pain pump or of her previous use of the actuator."

The fifth amended complaint suggests the problem grew worse after surgery. Fahey allegedly ordered an additional fentanyl prescription for Sandra, over and above the doses she was receiving through the pain pump. The fifth amended complaint alleges Fahey placed the order without contacting Alghannam or directing anyone from the pharmacy or clinical staff to do so. Worse, the fifth amended complaint alleges Fahey failed to act upon learning that Sandra was continuing to self-administer fentanyl after surgery and experiencing observable changes in mental status.

Here is where Alghannam allegedly enters the picture. According to plaintiffs: "Dr. Fahey knew that Dr. Alghannam was not allowed to see patients in the hospital but asked him to come in anyway in an effort to conceal his failure to properly handle

3

[Sandra's] pain pump." The fifth amended complaint does not specifically say that Alghannam saw Sandra at Rideout following her surgery. However, the fifth amended complaint alleges Alghannam violated the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.; the Elder Abuse Act) by "treating [Sandra] without having valid staff privileges at Rideout," "treating [Sandra] without obtaining valid consent," and "failing to turn off [Sandra's] pain pump as requested by Dr. Fahey." The fifth amended complaint does not contain any other substantive allegations describing Alghannam's role in caring for Sandra.

The fifth amended complaint asserts five causes of action against Alghannam, as follows: (1) professional negligence (first cause of action), (2) lack of informed consent (second cause of action), (3) wrongful death (third cause of action), (4) negligent infliction of emotional distress (fourth cause of action), and (5) elder abuse (sixth cause of action).

Alghannam demurred to the fifth amended complaint on statute of limitations grounds. Alghannam also argued the fifth amended complaint failed to state facts sufficient to constitute a cause of action for elder abuse. The trial court sustained the demurrer without leave to amend.[2] The trial court subsequently entered judgment for Alghannam. This appeal timely followed.

## II. DISCUSSION

### A. *Standard of Review*

" 'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.' " (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768; accord, *T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) When evaluating the

---

[2] The trial court's signed order does not appear to have been made part of our record.

4

complaint, we " 'accept the truth of material facts properly pleaded in the operative complaint, but not contentions, deductions, or conclusions of fact or law.' " (*Capito v. San Jose Healthcare System, L.P.* (2024) 17 Cal.5th 274, 280; see also *Nolte v. Cedars-Sinai Medical Center* (2015) 236 Cal.App.4th 1401, 1406 ["we accept as true even the most improbable alleged facts, and we do not concern ourselves with the plaintiff's ability to prove its factual allegations"].)

" ' " 'A demurrer based on a statute of limitations will not lie where the action may be, but is not necessarily, barred. [Citation.] In order for the bar . . . to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred.' " ' " (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1232; see also *Silva v. Langford* (2022) 79 Cal.App.5th 710, 716 [" ' " '[A] demurrer based on an affirmative defense will be sustained only where the face of the complaint discloses that the action is necessarily barred by the defense' " ' "].) If " 'the complaint's allegations or judicially noticeable facts reveal the existence of an affirmative defense, the "plaintiff must 'plead around' the defense, by alleging specific facts that would avoid the apparent defense." ' " (*Esparza v. County of Los Angeles* (2014) 224 Cal.App.4th 452, 459.) The application of an affirmative defense on demurrer based on facts alleged in the complaint, such as the statute of limitations, is subject to de novo review. (See *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191.)

When a trial court has sustained a demurrer without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) "The burden of proving such reasonable possibility is squarely on the plaintiff." (*Ibid.*)

*B.*      *Statute of Limitations*

A plaintiff must bring a claim within the limitations period after accrual of the cause of action. (Code Civ. Proc., § 312.)[3] Generally speaking, a cause of action accrues "when the cause of action is complete with all of its elements," including the wrongful act and resulting harm. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397 (*Norgart*).) The most important exception to the accrual rule is the discovery rule, which postpones accrual until the plaintiff discovers, or has reason to discover, the cause of action. (*Ibid.*) The discovery rule "may be expressed by the Legislature or implied by the courts." (*Ibid.*)

The statute of limitations applicable to medical malpractice actions is found in section 340.5, which provides: "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first."

The general rule applies to the three-year period, which runs from the date of injury. (§ 340.5; see also *Artal v. Allen* (2003) 111 Cal.App.4th 273, 282 ["Irrespective of the one-year provision of section 340.5, its three-year provision 'provides an outer limit which terminates all malpractice liability and commences to run when the patient is aware of the physical manifestations of her injury *without regard to awareness of the negligent cause*' "].) The discovery rule applies to the one-year period, and postpones accrual until "the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury." (§ 340.5.) The action must be filed within both time periods to be timely. (*Rose v. Fife* (1989) 207 Cal.App.3d 760, 767-768.)

---

[3] Undesignated statutory references are to the Code of Civil Procedure.

6

"The term 'injury' for purposes of section 340.5 ' "refer[s] to the damaging effect of the alleged wrongful act and not to the act itself." [Citation.] The injury is not necessarily the ultimate harm suffered, but instead occurs at "the point at which 'appreciable harm' [is] first manifested." ' [Citation.] An injury manifests when damage is 'evidenced in some significant fashion; when the damage has clearly surfaced and is noticeable.' " (*Filosa v. Alagappan* (2020) 59 Cal.App.5th 772, 779.) We will assume for argument's sake that Sandra's injury manifested on August 4, 2018, the date of her death. Alghannam was named as a defendant for the first time on July 31, 2023, some five years later. Plaintiffs' first through fourth causes of action, which sound in medical malpractice, thus appear time-barred as to Alghannam on the face of the fifth amended complaint.

Plaintiffs argue their first through fourth causes of action are not time-barred for three reasons. First, they argue section 340.5 does not apply. Specifically, they argue Alghannam's alleged acts were not "professional negligence" within the meaning of section 340.5. Instead, they say section 335.1 supplies the applicable statute of limitations. Section 335.1 provides a two-year statute of limitations for ordinary negligence, subject to the discovery rule, which "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (*Norgart, supra*, 21 Cal.4th at p. 397.) Relying on section 335.1, plaintiffs assert they discovered Alghannam's role in Sandra's post-surgical care in a deposition on July 29, 2022, and timely named him as a defendant on July 31, 2023. Thus, plaintiffs reason that their claims against Alghannam are timely so long as section 335.1 supplies the applicable statute of limitations, rather than section 340.5. Our first task, then, is to decide whether section 340.5 applies.

Second, plaintiffs argue that, assuming section 340.5 applies, the statute was tolled. Specifically, they argue Alghannam engaged in intentional concealment which tolled the statute's three-year period. Finally, plaintiffs argue the original complaint was

7

timely, and Alghannam was properly substituted for one of the original Doe defendants pursuant to section 474.  We address these arguments in turn.

        *1.       Applicability of Section 340.5*

        Section 340.5 is part of the Medical Injury Compensation Reform Act (Stats. 1975, 2d. Ex. Sess. 1975-1976, § 1; MICRA), "a comprehensive package of legislative reforms intended to remedy the spiraling costs of medical malpractice insurance." (*Gutierrez v. Tostado* (2025) 18 Cal.5th 222, 236.)  "The Legislature adopted several measures intended to have such an effect.  These measures included amending the statute of limitations for medical negligence claims to:  (1) shorten the outer limit for filing medical negligence claims from four to three years; (2) expand covered medical professionals to include additional categories of health care providers; (3) rephrase the description of covered actions to include any 'action for injury or death against a health care provider based upon such person's alleged professional negligence'; and (4) add the definition of 'professional negligence' that appears today."  (*Ibid.*)  Plaintiffs argue section 340.5 does not apply because Alghannam's alleged acts fall outside of the statutory definition of "professional negligence."  We are not convinced.

        Section 340.5, subdivision (2) defines "professional negligence" as follows: " 'Professional negligence' means a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed *and which are not within any restriction imposed by the licensing agency or licensed hospital*."  (Italics added.) Plaintiffs focus on the italicized language.  They suggest Alghannam's postsurgical treatment of Sandra does not satisfy the statutory definition of "professional negligence" because it fell within a restriction imposed by a licensed hospital.  Specifically, they suggest Alghannam violated restrictions imposed by Rideout by treating Sandra without having the staff privileges necessary to properly do so.  Plaintiffs' argument is not

8

without some force. After all, a hospital's decision to suspend or deny a physician's staff privileges can be fairly characterized as a "restriction" on that physician's ability to practice medicine there. (*El-Attar v. Hollywood Presbyterian Medical Center* (2013) 56 Cal.4th 976, 983 ["In order to practice at a hospital, a physician must be granted staff privileges"].) All the same, we think plaintiffs read too much into the exclusion of services "within any restriction imposed by . . . [a] licensed hospital" from the statutory definition of "professional negligence" (§ 340.5, subd. (2)).

MICRA uses the same definition of "professional negligence" in several places. (See, e.g., §§ 364 [requiring filing of notice of intent to sue and establishing 90-day waiting period], 667.7 [authorizing periodic payments of future economic damages], 1295 [requiring uniform language for arbitration provisions in contracts for medical services]; see also Civ. Code, § 3333.2 [limiting recovery of noneconomic damages to $350,000], Bus. & Prof. Code, § 6146 [limiting recovery of attorney fees in professional negligence cases].) Our Supreme Court considered the proviso excluding services "within any restriction imposed by the licensing agency or licensed hospital" from the definition of "professional negligence" (§ 340.5, subd. (2)) in *Waters v. Bourhis* (1985) 40 Cal.3d 424 (*Bourhis*). There, the plaintiff had seen a psychiatrist who allegedly induced her to "participate in sexual conduct by suggesting that it was part of therapy designed to alleviate her sexual inhibitions, and at other times he coerced her to participate by threatening to have her institutionalized if she did not cooperate." (*Id.* at p. 428.) She retained an attorney—the defendant—to sue the psychiatrist for medical malpractice and intentional infliction of emotional distress. (*Id.* at pp. 428-429.) The case settled before trial, and the attorney retained a higher percentage of the settlement amount than would have been allowed under Business and Professions Code section 6146. (*Bourhis, supra*, at pp. 427-428.) The plaintiff sued the attorney to recover the retained fees, and the attorney defended on the ground that the underlying action was not based on "professional negligence." (*Id.* at p. 430.) The attorney argued, "because

9

sexual misconduct by a psychiatrist toward a patient has long been a basis for disciplinary action by the state's licensing agency [citation], any cause of action which is based on such misconduct falls within the proviso, as a 'restriction imposed by the licensing agency.' " (*Id.* at p. 436, fn. omitted.) The high court rejected the attorney's argument, stating the proviso "was not intended to exclude an action from [Business and Professions Code] section 6146—or the rest of MICRA—simply because a health care provider acts contrary to professional standards or engages in one of the many specified instances of 'unprofessional conduct.' Instead, it was simply intended to render MICRA inapplicable when a provider operates in a capacity for which he is not licensed—for example, when a psychologist performs heart surgery." (*Ibid*.) The court concluded "the psychiatrist's conduct arose out of the course of the psychiatric treatment he was licensed to provide," and was therefore "professional negligence" within the meaning of Business and Professions Code section 6146. (*Bourhis, supra*, at p. 436.)

Our Supreme Court again considered the statutory definition of "professional negligence" in *Lopez v. Ledesma* (2022) 12 Cal.5th 848, 862 (*Lopez*). *Lopez* involved physician assistants, whose governing statute, the Physician Assistant Practice Act (Bus. & Prof. Code, § 3500.5 et seq.; Physician Assistant Practice Act), "only authorized [them] to perform services 'when the services are rendered under the supervision of a licensed physician and surgeon.' " (*Lopez, supra*, at p. 858.) The physician assistants there misdiagnosed a lesion while working at a dermatology clinic, with little to no supervision by the doctor who owned the clinic. (*Id.* at p. 854.) Interpreting Civil Code section 3333.2, the high court concluded, "a physician assistant practices within the scope of his or her license for purposes of MICRA's cap on noneconomic damages when the physician assistant acts as the agent of a licensed physician, performs the type of services authorized by that agency relationship, and does not engage in an area of practice prohibited by the [Physician Assistant Practice Act]." (*Lopez, supra*, at pp. 861-862.)

10

The *Lopez* court then considered whether the physician assistants' conduct brought them within the proviso for services " 'within any restriction imposed by the licensing agency or licensed hospital.' " (*Lopez, supra*, 12 Cal.5th at p. 862.) The court reaffirmed *Bourhis*, emphasizing that the proviso was not intended to exclude an action from MICRA whenever " 'a health care provider acts contrary to professional standards or engages in one of the many specified instances of "unprofessional conduct." ' " (*Ibid.*)

The *Lopez* court then observed that the Physician Assistant Practice Act "provides several examples of restrictions that, if imposed by the licensing agency, would limit a physician assistant's license and place particular services outside the ambits of MICRA." (*Lopez, supra*, 12 Cal.5th. at p. 863.) For example, "[t]he Physician Assistant Board may issue a probationary license that imposes '[r]estrictions against engaging in certain types of medical services' or 'restrictions on issuing a drug order for controlled substances.' [Citation.] And when a physician assistant is accused of engaging in 'unprofessional conduct,' including the violation of the supervisory regulations at issue here, the Physician Assistant Board may, after a hearing, impose 'probationary conditions upon a [physician assistant] license.' " (*Ibid.*) The court explained: "Such probationary condition would by definition amount to a 'restriction imposed by the licensing agency.' [Citation.] But unprofessional conduct, without more, does not. We agree with the Court of Appeal that 'the "restriction" mentioned in this clause must be a limitation on the scope of a provider's practice beyond simply the obligation to adhere to standards of professional conduct.' " (*Ibid.*) To hold otherwise, the court reasoned, would allow medical malpractice plaintiffs to "avoid MICRA's damages cap by identifying one member of a health care team who violates a single regulation governing that team." (*Ibid.*) Accordingly, the court concluded that physician assistants do not render services " 'within [a] restriction imposed by the licensing agency' [citation] simply by engaging in unprofessional conduct, such as the noncompliance with supervisory regulations at issue in this case." (*Id.* at p. 864.)

11

Neither *Bourhis* nor *Lopez* specifically address the proviso's exclusion for services "not within any restriction imposed by the . . . licensed hospital," as opposed to the licensing agency. (§ 340.5, subd. (2).) Nevertheless, we find them instructive. As previously discussed, the *Lopez* court observed that " 'the "restriction" mentioned in [Civil Code section 3333.2, subdivision (c)(2)] must be a limitation on the scope of a provider's practice beyond simply the obligation to adhere to standards of professional conduct.' " (*Lopez, supra*, 12 Cal.5th at p. 863.) Granted, the court was talking about a restriction imposed by a licensing agency. But Civil Code section 3333.2, subdivision (c)(2) uses the word "restriction" only once, which leads us to believe that a restriction imposed by a licensed hospital, to trigger the proviso, must also be " 'a limitation on the scope of a provider's practice beyond simply the obligation to adhere to standards of professional conduct.' " (*Lopez, supra*, at p. 863.) And, since Civil Code section 3333.2, subdivision (c)(2) and section 340.5, subdivision (2) are identical, we think the restriction alleged to have been violated by Alghannam, to take his conduct outside of the definition of "professional negligence," must equally be " 'a limitation on the scope of [his] practice beyond simply the obligation to adhere to standards of professional conduct.' " (*Lopez, supra*, at p. 863; see also *Bourhis, supra*, 40 Cal.3d at p. 436 [the proviso "was simply intended to render MICRA inapplicable when a provider operates in a capacity for which he is not licensed"].)

With these considerations in mind, we now return to the allegations of the fifth amended complaint. To reiterate, the fifth amended complaint alleges Alghannam violated the Elder Abuse Act by "treating [Sandra] without having valid staff privileges at Rideout." The fifth amended complaint further alleges: "Dr. Fahey knew that Dr. Alghannam was not allowed to see patients in the hospital but asked him to come in

12

anyway in an effort to conceal his failure to properly handle [Sandra's] pain pump."[4]  The fifth amended complaint does not say that Alghannam rendered services to Sandra outside the scope of services he was licensed to provide.  Nor does the fifth amended complaint specify how Alghannam's staff privileges were lacking, or which restriction, if any, may have been violated.

Here, we note that "staff privileges" encompasses any number of arrangements between health care provider and hospital.  (See Bus & Prof. Code, § 805, subd. (a)(4) [" 'Staff privileges' means any arrangement under which a licentiate is allowed to practice in or provide care for patients in a health facility"].)  These arrangements "include, but are not limited to, full staff privileges, active staff privileges, limited staff privileges, active staff privileges, limited staff privileges, auxiliary staff privileges, provisional staff privileges, temporary staff privileges, courtesy staff privileges, locum tenens arrangements, and contractual arrangements to provide professional services, including, but not limited to, arrangements to provide outpatient services."  (*Ibid.*)

Again, the fifth amended complaint does not specify which staff privileges Alghannam allegedly lacked, or how he may have run afoul of any restriction imposed by Rideout.  Given the aforementioned range of possibilities, we cannot say the allegation that Alghannam lacked staff privileges raises an inference that he rendered services to Sandra falling within " 'a limitation on the scope of a provider's practice beyond simply the obligation to adhere to standards of professional conduct.' "  (*Lopez, supra*, 12 Cal.5th at p. 863.)  That being so, we have no basis for inferring that Alghannam's alleged acts fell outside the statutory definition of "professional negligence," such that plaintiffs could be said to have pleaded around the statute of limitations defense.  And,

_____

[4] The fifth amended complaint thus suggests Alghannam acted within the scope of his practice by providing the type of service he was apparently licensed to provide, i.e., pain management.

13

since plaintiffs do not propose any further amendments to their complaint, we have no reason to believe they will be able to do so in the future. We therefore conclude the trial court properly applied section 340.5 in sustaining Alghannam's demurrer to the first through fourth causes of action.

      2.      *Tolling for Intentional Concealment*

Assuming section 340.5 applies, plaintiffs next argue the statute's three-year limitation period was tolled due to Alghannam's intentional concealment of his role in caring for Sandra. According to plaintiffs' opening brief: "Dr. Alghannam knew that he was prohibited from seeing patients at [Rideout] and intentionally attempted to conceal his involvement by not making a note in the medical chart and by leaving without having any discussions with any of the clinical staff." Plaintiffs' opening brief also asserts that Alghannam "snuck onto [Sandra's] hospital floor to adjust her [f]entanyl pain pump." None of these allegations appear in the fifth amended complaint and plaintiffs do not propose to amend their pleading to include them.

As previously discussed, section 340.5 provides that an action for professional negligence against a health care provider must be filed within three years after the date of injury, "or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." (§ 340.5.) Section 340.5 further provides: "In no event shall the time for commencement of legal action exceed three years unless tolled for any of the following: (1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person."

"Intentional concealment" must be specifically alleged. (*Donabedian v. Manzer* (1986) 187 Cal.App.3d 1021, 1027.) Furthermore, the concealment must be *intentional*. (*Ibid.*) Intentional concealment does not usually occur as the result of mere omissions or the exercise of poor judgment; thus, plaintiffs must allege affirmative acts by the

14

defendant to adequately plead intentional concealment. (*McNall v. Summers* (1994) 25 Cal.App.4th 1300, 1311-1312.) Plaintiffs do not meet these standards.

The fifth amended complaint alleges: "Dr. Fahey knew that Dr. Alghannam was not allowed to see patients in the hospital but asked him to come in anyway in an effort to conceal his failure to properly handle [Sandra's] pain pump." Contrary to plaintiffs' suggestion, the fifth amended complaint does not say Alghannam "intentionally attempted to conceal his involvement by not making a note in the medical chart and by leaving without having any discussions with any of the clinical staff." Indeed, the fifth amended complaint does not specifically allege that Alghannam engaged in any affirmative act of intentional concealment. Moreover, and perhaps more importantly, plaintiffs do not suggest that they could amend their complaint to so allege. Under the circumstances, we conclude plaintiffs have failed to sufficiently allege any factual basis for tolling the limitations period.

### 3. Relation Back

Plaintiffs next argue their claims against Alghannam are timely, because they relate back to their original complaint under section 474. This argument also fails.

Section 474 allows a plaintiff ignorant of the name of a defendant to designate that defendant by a fictitious name and amend the complaint when the defendant's true name is discovered.[5] The amended complaint relates back to the date of the filing of the original complaint, allowing the plaintiff to avoid the bar of the statute of limitations. (*Munoz v. Purdy* (1979) 91 Cal.App.3d 942, 946; *Scherer v. Mark* (1976) 64 Cal.App.3d 834, 842.) A plaintiff has three years after the filing of the original complaint in which to

---

[5] Section 474 provides, in pertinent part: "When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint, or the affidavit if the action is commenced by affidavit, and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceedings must be amended accordingly."

identify the fictitiously named defendant. (§ 583.210, subd. (a); *Munoz v. Purdy, supra*, at p. 946.)[6] "Hence, the plaintiff can 'file[] a timely complaint under section 474 . . . . From the time such a complaint is filed,' under section 583.210, subdivision (a), he 'has three years,' and the machinery of discovery, 'to identify . . . the defendant,' amend the complaint, and 'serve [him] . . . , effectively enlarging the . . . limitations period of three years' through the doctrine that the amended complaint 'relates back' to the original one." (*Norgart, supra*, 21 Cal.4th at p. 398.)

Plaintiffs here filed their original complaint on November 4, 2019. The complaint named Rideout and Does 1 through 50 as defendants. Alghannam was named as a defendant for the first time in the fourth amended complaint, filed on July 31, 2023.[7] Assuming without deciding that the relation back doctrine applies here, we conclude plaintiffs failed to timely serve the fourth amended complaint on Alghannam within the time required by section 583.210, subdivision (a). The trial court properly sustained Alghannam's demurrer to the first through fourth causes of action.

## C.    Elder Abuse

Plaintiffs argue the trial court erred in sustaining Alghannam's demurrer to the sixth cause of action for elder abuse. The trial court sustained the demurrer on the ground the fifth amended complaint failed to allege that Alghannam had any caretaking or

---

[6] Section 583.210, subdivision (a) provides, in pertinent part: "The summons and complaint shall be served upon a defendant within three years after the action is commenced against the defendant."

[7] The fourth amended complaint also named Does 1 through 50, indicating that Alghannam was not substituted for a fictitiously named party, as required by section 474. (See generally *Woo v. Superior Court* (1999) 75 Cal.App.4th 169, 176 ["the new defendant in an amended complaint [must] be substituted for an existing fictious Doe defendant"].) Regardless, we assume that was plaintiffs' intent. (*Id.* at p. 177 ["the courts of this state have considered noncompliance with the party substitution requirements of section 474 as a procedural defect that could be cured and have been lenient in permitting rectification of the defect"].)

custodial relationship with Sandra, as required for an elder abuse cause of action based on a theory of neglect. (See generally, *Winn v. Pioneer Medical Group, Inc.* (2016) 63 Cal.4th 148, 155 (*Winn*) ["a claim of neglect under the Elder Abuse Act requires a caretaking or custodial relationship—where a person has assumed significant responsibility for attending to one or more of those basic needs of the elder or dependent adult that an able-bodied and fully competent adult would ordinarily be capable of managing without assistance"].) Plaintiffs do not address that pleading failure, let alone suggest how they might correct it. Instead, they pivot to a different theory of elder abuse: namely, that Alghannam physically abused Sandra.[8] This theory also fails.

"The [Elder Abuse Act] affords certain protections to elders and dependent adults. Section 15657 of the Welfare and Institutions Code provides heightened remedies to a plaintiff who can prove 'by clear and convincing evidence that a defendant is liable for physical abuse as defined in [Welfare and Institutions Code] [s]ection 15610.63, or neglect as defined in [Welfare and Institutions Code] [s]ection 15610.57,' and who can demonstrate that the defendant acted with 'recklessness, oppression, fraud, or malice in the commission of this abuse.' " (*Winn, supra,* 63 Cal.4th at p. 152.) "Physical abuse" includes assault as defined in Penal Code section 240 and battery as defined in Penal Code section 242. (Welf. & Inst. Code, § 15610.63, subds. (a) and (b); see also Pen. Code, §§ 240 ["An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another"], 242 ["A battery is any willful and unlawful use of force or violence upon the person of another"].)

Plaintiffs argue Alghannam committed assault and battery by sneaking into Sandra's hospital room and adjusting her pain pump. But the fifth amended complaint does not say any of those things. The fifth amended complaint says only that Fahey

---

[8] Plaintiffs also advance a neglect theory; however, given their failure to address the pleading issue, we need not consider it.

17

asked Alghannam to come to Rideout and Alghannam treated Sandra in some unspecified way. It does not say Alghannam adjusted Sandra's pain pump or touched her in any way. (See, e.g., *People v. Rocha* (1971) 3 Cal.3d 893, 899, fn. 12 [" 'It has long been established, both in tort and criminal law, that "the least touching" may constitute battery. In other words, *force* against the person is enough, it need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave any mark' "].) Nor does the fifth amended complaint allege Alghannam undertook any specific act likely to result in a touching. (*People v. Wyatt* (2012) 55 Cal.4th 694, 702 ["No actual touching is necessary [for assault], but the defendant must do an act likely to result in a touching, however slight, of another in a harmful or offensive manner"].) Although the fifth amended complaint generally alleges Alghannam treated Sandra, and treating someone may involve touching, we are not at all convinced that such a barebones allegation would be sufficient to state a cause of action for elder abuse based on physical abuse. We need not resolve that question, however, as the fifth amended complaint does not allege Alghannam "acted with 'recklessness, oppression, fraud, or malice in the commission of this abuse.' " (*Winn, supra*, 63 Cal.4th at p. 152.)

As the Court of Appeal for the First District, Division One recently explained: "The degree of opprobrium required for liability under the Elder Abuse Act is substantial. '[A] plaintiff must demonstrate by clear and convincing evidence that defendant is guilty of something more than negligence; he or she must show reckless, oppressive, fraudulent, or malicious conduct. The latter three categories involve "intentional," "willful," or "conscious" wrongdoing of a "despicable" or "injurious" nature. [Citations.] [¶] "Recklessness" refers to a subjective state of culpability greater than simple negligence, which has been described as a "deliberate disregard" of the "high degree of probability" that an injury will occur [citations]. Recklessness, unlike negligence, involves more than "inadvertence, incompetence, unskillfulness, or a failure to take precautions" but rather rises to the level of a "conscious choice of a course of action . . . with knowledge of the

18

serious danger to others involved in it." ' " (*Doe v. Kachru* (2025) 115 Cal.App.5th 175, 214-215.)

Even assuming the fifth amended complaint adequately alleges Alghannam committed an act likely to result in an offensive touching of Sandra (i.e., assault), nothing suggests he acted with the culpability required by the Elder Abuse Act, and plaintiffs do not suggest they can cure the defect. The trial court properly sustained the demurrer to the fifth amended complaint. (See *Doe v. Kachru, supra*, 115 Cal.App.5th at p. 214 [doctor's demurrer to elder abuse cause of action based on theory of medical battery properly sustained where the plaintiffs' complaint merely parroted the language of the statute, alleging doctor's " 'behavior was intentional, malicious, wanton, oppressive[], fraudulent, and/or reckless,' " but did not allege "any facts in support of these generic assertions"].)

D.      *Leave to Amend*

We next consider whether the trial court abused its discretion in denying leave to amend. As noted, the burden of proving a reasonable possibility that a complaint can be amended to state a viable cause of action falls "squarely on the plaintiff." (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.) "To satisfy that burden on appeal, a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' [Citation.] The assertion of an abstract right to amend does not satisfy this burden." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.) "Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend." (*Id.* at p. 44.)

Plaintiffs do not discuss leave to amend at all in their opening brief. Although they repeatedly attribute allegations to the fifth amended complaint that cannot be found there, they do not propose to amend the complaint to properly plead them, and do not

argue the trial court abused its discretion in sustaining the demurrer without further leave to amend. Plaintiffs' reply brief asserts the trial court erred in denying leave to amend, but offers no reason for their failure to raise the point earlier, and again fail to explain how they would amend to overcome the statute of limitations defense or assert a cause of action for elder abuse. (*Shimmon v. Franchise Tax Bd.* (2010) 189 Cal.App.4th 688, 694, fn. 3 [appellants' assertion that they should have been granted leave to amend, raised for the first time in reply and without good cause shown for failing to raise the point earlier, rejected].) Under the circumstances, we conclude plaintiffs have failed to carry their burden of showing the trial court abused its discretion in sustaining the demurrer without further leave to amend. (*Blank v. Kirwin, supra*, 39 Cal.3d at p. 318.)

## III. DISPOSITION

The judgment is affirmed. Respondent shall recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/S/

_____

RENNER, Acting P. J.

We concur:

/S/

_____

MESIWALA, J.

/S/

_____

FEINBERG, J.

20